## MCCREERY v. GARVIN.

1. STATEMENT OF NOTES NOT AN OPEN ACCOUNT.—In action on a bond to recover the amount due by notes and drafts secured by such bond, a statement of the drafts and notes upon which plaintiffs base their claim is not an open account, and, therefore, not irrelevant under the pleadings nor inadmissible in evidence.

2. CORPORATION—AGENTS—WRITTEN PAPER.—Where a corporation by formal written action appointed a business agent, it was for the court to define his relations to the corporation; and parol testimony upon this matter was incompetent. The corporation is bound by all acts of the agent within the scope of his agency, and no private limitations upon his powers could affect the rights of those who dealt with him in ignorance of such limitations.

3. NONSUIT.—There being some testimony to support the claim of plaintiffs under their complaint, a nonsuit was properly refused.

4. CORPORATION—AGENT—INSTRUCTING JURY.—Where the undisputed testimony shows that a mercantile corporation appointed a business agent in writing, and a bond was given by the stockholders individually, which bond recited the purchase of goods from plaintiffs, and provided for their payment and the payment of subsequent purchases, and such agent acted during the time that notes for these purchases were executed and delivered to plaintiffs by this agent for the corporation, the trial judge did not err in charging the jury that this agent had authority to sign these notes, even though the resolution appointing him declared that he was to act under the supervision of the board of directors.

5. ASSIGNMENT FOR CREDITORS—ACCEPTANCE—ATTORNEY.—The attendance of a creditor at a meeting of creditors of a debtor who has made a general assignment, and his participation in the selection of an agent to act with the assignee, and a letter by the attorney of such creditor to such agent, directing him as to the sale of the assigned goods, and bidding him to confer, if in doubt, with the writer, was not an acceptance of the terms of the assignment, and the trial judge properly so instructed the jury. If the attorney had accepted, it would not have bound the client.

Before HUDSON, J., Aiken, October, 1892.

Action by T. A. McCreery & Co. against Robert Garvin and seven others, commenced February 26, 1892.

*Messrs. Henderson Bros.* and *John Gary Evans*, for appellants.

*Messrs. J. W. Muller* and *Croft & Chafee*, contra.

June 26, 1893.    The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.    The plaintiffs bring this
action to recover from the defendants the amount alleged to be
due by the Farmers' Alliance Trade Medium, a corporation
formed under the general incorporation law of the State, to the
plaintiffs, the payment of which was secured by the bond of
the defendants.    In their complaint, plaintiffs set out a copy
of this bond; allege that the said corporation is indebted to
them in the sum stated therein, "upon its bills and promissory
notes made and delivered to the plaintiffs under their said firm
name; that all of said bills and notes were at maturity pre-
sented to the said Farmers' Alliance Trade Medium for pay-
ment, but were not paid; of all which the defendant had due
notice, and that the condition of the said bond has been broken,
and there is now due thereon" the sum stated.    The defendants
answered, admitting the execution of the bond above referred to,
but denying each and every other allegation in the complaint.

The condition of the said bond, which was executed on the
17th of June, 1891, is as follows: "Whereas the Farmers'
Alliance Trade Medium, a body corporate, doing business at
Wagener, in Aiken County, in said State, and now indebted to
T. A. McCreery and B. B. McCreery, partners as aforesaid, in
divers sums of money for goods sold and delivered; and whereas
it has been mutually agreed between the said parties that the
said T. A. McCreery & Co. shall and will extend and give to
the said Farmers' Alliance Trade Medium a line of credit on
such goods, wares and merchandise as the said Farmers' Alli-
ance Trade Medium shall, from time to time, order in the line
of the business of the said T. A. McCreery & Co.    Now the
condition of this obligation is such, that if the said Farmers'
Alliance Trade Medium shall, from time to time, and at all
times hereafter, well and truly pay, or cause to be paid, to the
said T. A. McCreery & Co. all sums of money they may owe
them by bill or note as the same matures and becomes payable,
and further shall pay on demand all other sums of money they
may owe them on any account, as well as all sums that are now
contracted as that which may hereafter be contracted, then this

obligation to be void, otherwise to remain in full force and virtue."

Before proceeding to discuss the questions made under defendants' first defence, it is well to state certain undisputed facts, as well as certain other facts as to which there is a conflict of testimony. The Farmers' Alliance Trade Medium was incorporated "to do a general merchandise business," and received its charter on the 5th of July, 1890. 20 Stat., 1012. At a meeting of the directors of said corporation, held on the 3d of November, 1890, the following action of the board was taken: "Moved and seconded, that we elect H. J. McLane president, and G. W. Busbee secretary, and G. S. Baggott treasurer of the board of directors for the ensuing year. Moved and seconded, that we elect J. E. Busbee business agent for the year, at $50 per month, including clerk hire and all bookkeeping necessary pertaining to the house; also to act under the supervision of said board." The notes in question here were all given after the date of the bond, and were signed "Farmers' Alliance Trade Medium. J. E. Busbee, Manager." And the same is true of the draft, except that it is signed "J. E. Busbee, Manager." Two of the notes purport to be also signed "H. J. McLane, President." But there was no proof of his signature, and, on the contrary, he denied that he had ever signed either of said notes.

A meeting of the stockholders of the Farmers' Alliance Trade Medium, attended by a large majority of the stockholders, was held on the 29th of January, 1892, at which the plaintiffs' agent, accompanied by Mr. Muller as his counsel, appeared and presented a statement of plaintiffs' claims, amounting to $4,078.86, whereupon it was "Resolved, that the settlement of the business between the Farmers' Alliance Trade Medium and T. A. McCreery be adjusted between the attorneys, Muller and Henderson Bros.; further agreed, that the house be locked and the key turned over to Captain G. A. Lucas." Mr. McCreery, in his testimony, says that the statement thus referred to was nothing more than a statement of the amount of the draft, with the credits to which it was entitled, and a statement of the several notes with the amounts and dates thereof, showing

34—39

the total amount due thereon, with interest, to be the said sum of $4,078.86, a copy of which statement accompanies his testimony. He also testified that no objection to, or denial of, any item mentioned in this statement was made by any of the parties, and there was no testimony to the contrary; but Mr. McCreery's further statement that the notes themselves were presented, along with the statement, is denied by the witnesses for the defence, though they all admit that the statement was presented and a copy furnished to the meeting. It further appears from the testimony that some time in January, 1892, but at what precise date does not appear, J. E. Busbee was removed from his position as business agent, and one Williams appointed in his place; but as the draft and all the notes, relied upon as evidences of indebtedness on the part of the Farmers' Alliance Trade Medium to the plaintiffs, bear date prior to the 1st of January, 1892, we suppose the precise date of Busbee's removal is not material.

The jury having rendered a verdict in favor of the plaintiffs, upon which judgment was duly entered, defendants appeal upon the several exceptions set out in the record.

The first and sixth exceptions may be considered together. In the first, error is imputed to the Circuit Judge in permitting plaintiffs to prove the alleged indebtedness of the Farmers' Alliance Trade Medium by introducing its account with the plaintiffs, when the complaint declared upon the promissory notes and drafts, and not upon an open account; and in the sixth it is claimed that the judge erred in refusing defendants' second request to charge that the action being upon the bond, and the breach assigned being the non-payment of bills and promissory notes—not open accounts—plaintiffs cannot recover the amount of such open accounts. Both of these exceptions are taken under a misconception of the facts. The plaintiffs did not offer to prove any indebtedness by open account, but relied upon the draft and notes given to close the open accounts, and there was, therefore, nothing upon which the request to charge could have been based. Hence, even if it could properly be held, in view of the express stipulation in the bond, not only that the Farmers' Alliance Trade Medium

should pay all sums due by bill or note, but "further shall pay on demand all other sums of money they may owe them *on any account*," that the plaintiffs could recover only such sums of money as were evidenced by bill or note, and could not recover any sum due by open account, yet that could not affect the present case, for here there was no offer to prove any open account, and no attempt to recover thereon. What is termed an open account was, in fact, nothing more than a mere statement of the draft and notes upon which the plaintiffs based their claims.

The second exception imputes error to the Circuit Judge in rejecting the testimony of the witness, "H. J. McLane and others as to the relations between J. E. Busbee and the Alliance Trade Medium, and what Mr. Busbee did, and how he acted, and by what authority he acted." In view of the fact that the relations of Busbee to the Alliance Trade Medium had been established by a formal act of the board of directors of the corporation, expressed in a resolution of the board spread upon their minutes, we think that the parol testimony offered was clearly incompetent. If the board found that Busbee was either incompetent or unfaithful in the discharge of the duties of the position to which they had appointed him, the remedy was in their own hands, one to which they subsequently resorted, but too late to affect the present case. After having appointed Busbee as their business agent, and allowed him to remain in that position for more than a year, the corporation would be bound by all of his acts within the scope of his agency (which will be presently considered), and no private instructions or limitations placed upon his general authority could affect the rights of those with whom he had been and was dealing as business agent of the corporation, unless such private instructions or limitations were brought to the notice of those with whom he had thus been dealing; and of this there was no pretense.

The third exception alleges error in refusing the motion for a nonsuit. This exception is so manifestly untenable that one of the counsel for appellants is compelled to disclaim any reliance upon it. We do not, therefore, deem it

necessary to consider it, as it is too clear for argument, for there was certainly some testimony (and we must say we think quite sufficient) to sustain plaintiff's claim.

The fourth and fifth exceptions may be considered together. They practically raise the question whether the Circuit Judge erred in refusing to leave the question to the jury whether Busbee had authority to sign the notes in question, and on the contrary charging the jury that Busbee did have authority so to do. As we understand it, an agency may be established either by express appointment or by acts and declarations of the principal, holding out one as his agent, or by subsequent recognition and ratification of acts done by one claiming to be the agent. Inasmuch as in this case the agency of Busbee was constituted by express appointment in writing, we need not consider whether he was held out to the world as agent, or whether his acts as such were subsequently ratified by the alleged principal. The undisputed evidence in this case is that the Farmers' Alliance Trade Medium was a corporation duly chartered for the purpose of carrying on "a general merchandise business," which necessarily involved the purchase and sale of goods, wares and merchandise, and the recitals in the bond show that goods had been bought from the plaintiffs and indebtedness had been incurred therefor, and the express purpose of the bond was to secure the payment thereof, as well as to secure "a line of credit" with the plaintiffs for the purchase of other goods; which necessarily implied buying on a credit, and securing the payment for such purchases in the usual way of giving bills or notes. Now as a corporation can only act through some individual as its agent, and as the minutes of the board of directors showed that J. E. Busbee had been appointed its business agent, and as the undisputed testimony showed that he was acting as such agent during the time when the notes in question were given, we do not think that there was any question of fact to be left to the jury, and there was no error on the part of the Circuit Judge in giving the instructions complained of; and hence neither of these exceptions can be sustained. See 1 Am. & Eng. Enc. Law, 363, and notes.

It is contended, however, that the concluding words of the

resolution, appointing Busbee as business agent—"also to act under the supervision of said board".—had the effect of limiting the general authority conferred by such appointment. We cannot so construe those words. We suppose that an agent, or other officer, of a corporation governed by a board of directors always acts under the supervision of such board; but that by no means implies that such agent can do no act except such as may be expressly approved by the board. So much for the questions arising under the first defence set up in the answer.

The defendants, however, as a second defence, claim that the defendants were released from liability under the bond, upon the ground that the Farmers' Alliance Trade Medium made an assignment for the benefit of its creditors on the 19th of February, 1892, and that the plaintiffs practically accepted the same, and thereby released the defendants from any liability. The undisputed facts in relation to this branch of the case are substantially as follows: On the 19th of February, 1892, the said corporation made an assignment for the benefit of its creditors, providing, amongst other things, that the residue of the proceeds of the assigned property (after paying expenses, &c., as we understand) should be applied to the payment *pro rata* of the claims of such creditors as should accept and release *in writing* the corporation from any unpaid balances due thereon. In pursuance of the statute, a meeting of the creditors was duly called by the assignee, at which the plaintiffs were represented by their counsel, Mr. Muller, and upon his motion, he representing a majority in amount of the claims presented, G. A. Lucas was appointed agent of the creditors. At this meeting, Mr. Muller stated in writing that the plaintiffs "would not accept the terms of the assignment by agreeing to discharge the Farmers' Alliance Trade Medium of all liability by accepting their *pro rata* share of the funds under the deed of assignment; but, to the contrary, they refused to come in and accept said terms, and appeared at the meeting solely for the purpose of electing an agent of the creditors."

A very short time after this meeting, Mr. Muller wrote a letter to Mr. Lucas, informing him of his appointment as agent, and saying: "Under the laws of the State, you are to act on

behalf of the creditors jointly with the assignee (J. E. Busbee). Our idea, and the idea of the assignee, is that the goods should be sold in bulk. Mr. Busbee said yesterday that Gantt & Gantt wanted to buy the entire stock and store fixtures. Don't make any sale until you have conferred with either myself or Croft & Chafee, my associates. If at any time you are in doubt as to your duties, write to either C. & C. or myself." This conduct on the part of the counsel for plaintiffs, it is contended by appellants, operated substantially as an acceptance of the terms of the assignment by the plaintiffs, and as a release of any unpaid balances due after the application of plaintiffs' *pro rata* of the proceeds of the assigned property, and thereby released the defendants from liability under their bond; or, at least, that the question, whether it did so operate, should have been left to the jury. This view the Circuit Judge declined to accept, and, on the contrary, charged the jury, that such conduct on the part of the plaintiffs' attorney did not amount to an acceptance of the assignment, and, therefore, the defendants were not thereby discharged. This constitutes the basis of appellants' seventh, eighth and ninth exceptions.

These exceptions cannot be sustained. The question whether the plaintiffs had accepted the terms of the assignment depended solely upon the construction of written documents, and there was no question of fact to be left to the jury. We agree entirely with the construction adopted by the Circuit Judge. The fact that the plaintiffs, by their counsel, attended the meeting of creditors called for the purpose of appointing an agent, and participated in the appointment of such agent, certainly cannot operate as an acceptance of the assignment, or even as an indication of a purpose to do so. Such meetings are always held before the time expires within which creditors are allowed to determine whether they will accept or not. Indeed, whether an agent shall be appointed or not, and who he shall be, may be a very material element to be considered in determining the question of acceptance, as upon that may depend the faithfulness and efficiency of the administration of the assigned assets. Hence, even where a creditor has made up his mind not to accept the terms of the assignment, he has

a perfect right, secured to him by statute (section 2006 *et seq.*, General Statutes), to attend a meeting called for the purpose of appointing an agent, and participate therein, for it is important to the interests even of a non-accepting creditor that the assets of the assigned estate should be faithfully and efficiently administered. It is quite clear, therefore, that the fact that the plaintiffs, by their counsel, attended the meeting called for the purpose of appointing an agent could not possibly be construed as amounting to an acceptance of the assignment. See *Jackson* v. *Patrick*, 10 S. C., 203-4; *Jaffray* v. *Steedman*, 35 *Id.*, 33. For like reasons, we do not see how the letter of Mr. Muller to the agent, Lucas, could be regarded even as an intimation that plaintiffs intended to accept the assignment, much less as an actual acceptance. But even if Mr. Muller, acting as an attorney at law, had undertaken, in express terms, to accept and release, on the part of the plaintiffs, his act would not have been binding on them. *Gilliland* v. *Gasque*, 6 S. C., 406.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.