15508

MOORE v. POSTAL TELEGRAPH-CABLE COMPANY

(24 S. E. (2d), 361)

226

April, 1942.

*Messrs. Nelson, Mullins & Grier,* of Columbia, Counsel for Appellant,

*Mr. L. C. Wannamaker,* of Cheraw, and *Mr. James E. Leppard,* of Chesterfield, Counsel for Respondent, ▮

Counsel for Appellant, in Reply, ▮

February 18, 1943.

The opinion of the Court was delivered by Circuit Judge G. Dewey Oxner, Acting Associate Justice:

The respondent, as committee of the person and estate of Allie Foster Moore, commenced this action in 1937, for the recovery of certain benefits alleged to be due to her ward as the surviving wife of John E. Moore, a former employee

of appellant, under a pension and benefit plan which appellant established for the benefit of its employees.

The action was tried before Honorable Henry Busbee, Special Judge. The parties waived trial by jury. The trial Judge, after hearing the testimony and arguments, awarded judgment for plaintiff, from which defendant appeals.

The material facts are undisputed. John E. Moore entered the employ of appellant on January 1, 1891, and continued therein until May 10, 1920, when he became incapacitated because of his mental and physical condition and was admitted to the South Carolina State Hospital where he remained a patient until his death on November 16, 1935.

In 1907, Mr. Moore made application for membership in "The Postal Telegraph Employees Association." The plan of this association, the precise benefits given to employees, and the contributions, if any, made by them are not set out in the record. Presumably, it carried benefits similar to the plan later adopted by the appellant which we shall hereafter discuss. In any event, when Mr. Moore became incapacitated he was granted disability benefits under the plan of the association, which was then in force, in the sum of $33.02 per month, based on a salary of $75.00 per month which he was receiving at the time of becoming incapacitated. The payment of these benefits continued until December, 1929.

On June 30, 1929, "The Postal Telegraph Employees Association" was dissolved and a new pension and benefit plan was adopted by appellant, effective on July 1, 1929. Under the new plan the employees who had been·receiving disability benefits under the association plan were given the option of continuing to receive those disability benefits, or, in lieu thereof, of receiving benefits which their service record would entitle them under the new plan. The election to come under the new plan was required to be made in writing prior to December 31, 1929, and if not made by such employee, it was provided that the benefits under the old

plan would be continued for the limited period therein specified, at the expiration of which time the employee would cease to receive further payments from the company in any form.

John E. Moore, after some inquiry and persuasion on the part of appellant, finally elected in December, 1929, to accept the new plan. Under this new plan he was classified as a disability pensioner and was paid a monthly pension of $23.92 from December, 1929, to the date of his death in November, 1935.

The new plan, a copy of which was introduced in evidence, was to be known as the "International Telephone Pension and Benefit Plan." No contributions were required of the employees. This plan or agreement provides for retirement pensions and disability benefits for employees, and death benefits and pensions to their dependents. This action was brought to recover in behalf of the widow, as a dependent of her husband, certain of these benefits under this plan or agreement.

Article V, Section 2, of the plan provides that upon the death of a disability pensioner, there shall be paid to his dependents, if any:

"(a) If the term of service was two years or more a death benefit of $500, in addition.

"(b) If the terms of service was 10 years or more, a pension payable monthly during dependency, but for a period not exceeding one-third of the employee's term of service, which pension shall be two-thirds of the disability pension provided for in 'IV' 2 (c) of this Plan."

Section 9 of Article II is as follows: "The word 'dependents' shall mean (1) the employee's wife, (2) his children under the age of 18, (3) other persons related by blood, marriage, or adoption, who, immediately preceding the employee's retirement, death or disability, were receiving their principal support from the employee. When (1) the wife of the employee remarries, (2) the children of the em-

ployee marry, or attain the age of 18 and are not incapable of self-support, (3) persons other than the wife or children under 18 are capable of self-support or secure an outside income adequate for their support, their dependency shall be deemed to have terminated, unless the Committee shall decide otherwise."

Article VIII, Section 1, provides: "A Pension and Benefit Committee of five persons shall be appointed by and be subject to the direction of the Board of Directors, which Committee shall determine conclusively for all parties all questions arising in the administration of the Plan, including term of employment, rate of pay, degree and period of disability, reasonable medical services, and whether an accident was in the course of employment. The decision of the Committee may be based upon such records and information as may be obtainable from any source."

Under the terms of Section 5, Article V, it is provided that the "Committee shall have complete and final power and discretion to determine the existence of dependency."

A claim was made in 1936 in behalf of the widow of John E. Moore for benefits claimed to be due her under this plan. It was referred to the Pension and Benefit Committee established under Section 1, Article VIII. The Committee concluded that she was not a dependent with the intendment of Article II, Section 9, hereinabove quoted, upon the ground that "the widow had, for more than fifteen years prior to the death of said John E. Moore, been confined in the State Hospital for the Insane, where her care, maintenance and principal, if not entire, support were provided at public expense."

It appears to be undisputed that the widow, Mrs. Allie Foster Moore, has continuously been, with the exception of about one year, a mental charity patient in the South Carolina State Hospital for the past twenty-five or thirty years and is still a patient in that institution. Nothing has ever been paid by John E. Moore or his estate to the State Hos-

pital for services rendered by it to Mrs. Moore, While Mr. Moore during his lifetime did render such financial assistance to Mrs. Moore as his limited means permitted, consisting of providing her with extra clothing and from time to time transferring a small amount of funds from his account in the hospital to her name, her principal support was furnished by the State Hospital.

The main question presented for determination is whether under these circumstances Mrs. Moore was a dependent within the meaning and intendment of Article II, Section 9. Appellant contends that the final decision of this question rested with the Pension and Benefit Committee and that since the Committee ruled against respondent, its decision, in the absence of fraud or bad faith, is final and conclusive and not subject to review by the Courts. This contention necessarily involves the question as to whether there was. any reasonable basis for the conclusion of the Committee. As the facts are undisputed, the answer to this question depends on the proper construction of Section 9, Article II, which we have quoted. The trial Judge held that under the terms of this section the wife of the employee was made a dependent, irrespective of whether she was in fact dependent upon her husband for support. Appellant contends that actual dependency is an essential element of the claim.

After a careful consideration of this section, we think the construction adopted by the trial Judge is correct. The language used is that of appellant and seems to us clear and unambiguous. This section expressly makes the wife of the employee and his children under the age of 18 "dependents." As to them there is no qualification. As to the other relatives there is a qualification that they must have received "their principal support from the employee." To hold that these qualifying words apply to the wife and children under the age of 18 would necessitate a strained and unreasonable construction of this section. The latter portion of this

section lends strength to the conclusion we have reached. It is there provided that the dependency of the wife or children under 18 is terminated upon marriage, but as to other relatives dependency ceases when they "are capable of self-support or secure an outside income adequate for their support." Under the definition of "dependents" in this section the relation of husband and wife is all that is necessary to make her a dependent upon him. It follows from this conclusion that the extent to which this employee before his death was contributing to the support of his wife is immaterial. He left surviving no children under the age of 18 and those over 18 were self-supporting, and as the wife has never remarried, she is clearly entitled to the benefits provided for under Article V, Section 2.

Appellant contends that where an employer at its own expense creates and maintains a plan providing benefits to employees in case of sickness, injury or death, such employer can reserve to itself, or to a committee appointed by it, final decision of all matters relating to the administration of the plan and such decision, in the absence of fraud or bad faith, is final and conclusive. The following cases, cited in appellant's brief, appear to sustain this contention: *Clark v. New England Telephone & Telegraph Company,* 229 Mass., 1, 118 N. E., 348; *Spiner et al. v. Western Union Telegraph Company,* Tex. Civ. App., 73 S. W. (2d), 566; *Dowling v. Texas & N. O. R. Company,* Tex. Civ. App., 80 S. W. (2d), 456; *Magnolia Petroleum Company v. Butler,* Tex. Civ. App., 86 S. W. (2d), 258; and *Webster v. Southwestern Bell Telephone Company,* Tex. Civ. App., 153 S. W. (2d), 498. But we do not think it is necessary to pass upon this question for the reason that in each of these cases the Committee had before it some disputed issue of fact, or some controversy concerning which there was a reasonable basis for difference of opinion. In none of these cases could it be said that the Committee had acted unreasonably or arbitrarily. The au-

thorities cited appear to recognize the principle that there must be some reasonable basis for the conclusion of the Committee and that such conclusion cannot be based upon mere whim or caprice. In the case of *Clark v. New England Telephone & Telegraph Company, supra* [229 Mass., 1, 118 N. E., 350], the Court said: "The methods of investigation of claims and general principles followed by the committee in the performance of their duties must be fair and reasonable."

The syllabus of the Court in the case of *Wilson v. Rudolph Wurtilizer Company,* 48 Ohio App., 450, 194 N. E., 441, is as follows: "Where an employer has contracted with an employee to pay him a pension after ten years or more of service which, in the opinion of the officers of the employer, had been faithful and loyal, such opinion is to be based upon substantial reasons, and not upon mere whim or caprice, amounting to direct evasion of a concrete responsibility definitely assumed."

In discussing this question, the Court said: "It is plain that the pension plan was an integral part of the program for his employment. To say that it constituted merely a nebulous inducement, unsupported by an intent to be bound by the provisions mentioned, is to charge the employer with the grossest fraud."

In the case of *Clarkson v. Supreme Lodge,* 99 S. C., 134, 82 S. E., 1043, 1045, the Court said: "When the exercise of judgment and discretion is vested, either by law or contract, in an individual or governing body, a reservation is implied that it must be exercised in good faith and reasonably."

Applying these principles to the facts of this case, we think it is clear that the conclusion of this Committee does not bar the respondent in maintaining this action. There were no disputed facts for the Committee to pass upon. Under appellant's own definition of dependency, she was a dependent. She was only required to

show that she was the widow of this employee which entitled her to the benefits sought as long as she remained unmarried. Her right to these benefits was clear. There was no reasonable basis for the conclusion of the Committee. Apparently, it acted under a total misapprehension of the meaning of the section under consideration; otherwise, it could not in good faith have denied this claim. This agreement constituted a contract which respondent had a right to enforce. As pointed out by the Court of Appeal of Louisiana, in the case of *Robinson v. Standard Oil Company of Louisiana,* La. App., 180 So., 237, 239:

"It is now well settled that a benefit plan offered by an employer at its own expense to its employees, when impliedly accepted by the employee through remaining in the employment, constitutes a contract between the employer and the employee, the service rendered by the employee being a sufficient consideration to support the promise of the employer to pay benefits."

The following cases are to the same effect: *Schofield v. Zion's Co-operative Mercantile Institution,* 85 Utah, 281, 39 P. (2d), 342, 96 A. L. R., 1083, and *Gearns v. Commercial Cable Company,* 177 Misc., 1047, 32 N. Y. S. (2d), 856.

In concluding our discussion of this phase of the case, we do not wish to be understood as passing upon the validity of the stipulation in the plan to the effect that.the Committee "shall determine conclusively for all parties all questions arising in the administration of the plan," or to the extent, if any, to which the parties may by agreement preclude their legal right to seek relief in the Courts. We only determine that assuming the validity of the agreement, the action of the Committee must be in good faith, not arbitrary, and there must be some reasonable basis for its conclusion.

The remaining exceptions do not relate to the right of recovery, but to the amount. Appellant contends that the plan inaugurated in 1929, was changed in

October, 1930, which resulted in a reduction of the death benefit allowed under Section 2, Article V. The only evidence offered in proof of the alleged change was the deposition of a witness who testified that he was secretary of the Committee; that the Committee during the early part of 1930, recommended to the board of directors of appellant certain changes in the plan to be made effective on October 1, 1930; that these proposed changes were submitted to the board of directors at a meeting held on July 3, 1931, and after being considered were adopted; and that a printed announcement of these changes appeared in an "order" issued by appellant on January 19, 1931, which was distributed to the district superintendents, general managers and department heads. A mimeographed copy was attached to the deposition. Respondent objected to this testimony upon the ground, among others, that the original records and minutes of the proceedings were the best evidence and that parol evidence of their contents was not admissible until it was shown that they were not available. The trial Judge sustained the objection and appellant contends that he erred in this ruling.

This witness had been secretary of the Committee for four years, and for two years immediately prior thereto was chief assistant to the secretary. While all of the records of the Committee were in his possession, he had no personal knowledge of the transactions in 1930 and 1931. It is clear from his testimony that he was testifying from information obtained from the records in his possession and not from matters within his own personal knowledge. There is no showing whatsoever that the original minutes or records of the alleged change were not available. The fact that the witness refers to the announcement of the change as an "order" gives it no solemnity. It purports to be nothing but an announcement by the chairman of the Committee of the changes that had been made and the paper sought to be introduced was a mimeographed copy. The

original "order" was not produced and there was no showing that it was not available. Article VIII, Section 2 requires that the Committee "shall keep minutes of its meetings." We think the original minutes of the Committee and board of directors were the best evidence of any change in the plan and that the parol testimony offered was properly excluded. 32 C. J. S., Evidence, § 810; *Dial v. Valley Mutual Life Association of Virginia*, 29 S. C., 560, 8 S. E., 27; *McCreery v. Garvin*, 39 S. C., 375, 17 S. E., 828. It may not be amiss to further point out that there was no contention by appellant that Mr. Moore ever had any notice of this alleged change.

The trial Judge reached the conclusion that the respondent was entitled to recover upon certain grounds in addition to those which we have discussed, and certain additional grounds are discussed by respondent's counsel in their brief, but in view of the foregoing conclusions, we find it unnecessary to pass upon them.

All exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES concur.