542 S.E.2d 755

**Joshua DAVIS, Respondent,**

v.

**ORANGEBURG–CALHOUN LAW ENFORCEMENT COMMISSION, Appellant.**

No. 3292.

Court of Appeals of South Carolina.

Heard Sept. 13, 2000.

Decided Jan. 29, 2001.

Rehearing Denied March 26, 2001.

Kathryn Thomas and D.L. (Dirk) Aydlette, III, both of Gignilliat, Savitz & Bettis, of Columbia, for appellant.

J. Lewis Cromer, of Cromer & Mabry; and Benjamin A. Dunn, II, of Dunn, Dunn & Mitchell, both of Columbia, for respondent.

HOWARD, Judge:

In this wrongful discharge action, the Orangeburg–Calhoun Law Enforcement Commission ("OCLEC") appeals from a jury verdict in favor of Joshua Davis. We reverse.

## FACTS

On May 2, 1985, Orangeburg County, Calhoun County, and the City of Orangeburg formed the Orangeburg–Calhoun Regional Law Enforcement Commission to provide facilities for incarceration of prisoners. A detention center was established and operated by this joint commission, composed of representatives appointed by the governing bodies of all three entities. The detention center included a canteen from which inmates and staff could purchase drinks, snacks, cigarettes, and sundries. The money generated from the canteen and the pay telephones was known as the "canteen fund."

During the relevant times, James Gordon was the Director of the Detention Center. In 1990, Joshua Davis applied for the position of Deputy Director. Davis told Gordon that he had a bachelor's degree in marketing and accounting and at least thirty hours of college credit in accounting.[1] Gordon hired Davis, and assigned him the task of establishing an accounting system for the canteen fund so that it could be

---

1. Davis did have a degree in marketing, but his college transcript reveals he accumulated only nine credit hours in accounting courses, with one course repeated due to a below-average grade.

properly audited. At that time there were no policies or procedures governing the handling of the canteen fund.

Davis drafted policies and procedures which the commission revised and adopted in 1991. Under these procedures, Davis had primary responsibility for counting, verifying, and maintaining the cash receipts, as well as verifying the deposit of funds by an administrative assistant. Davis reconciled the fund records and reported monthly in writing to the commission.

In 1993, the City of Orangeburg withdrew from the commission. Orangeburg and Calhoun Counties repealed their enabling ordinances and created a new commission. Although Davis argues in his brief that Calhoun County did not follow Orangeburg County's lead in abolishing the "old" OCLEC by amending the Calhoun ordinance, it is clear that Calhoun County also abolished the old OCLEC. Calhoun County ordinance 92–5 "abolish[es] the existing commission and establish[es] a new commission." Seven members were appointed to the new OCLEC, including some who had served on the previous commission.

In June 1993, the OCLEC approved a canteen fund policy largely promulgated by Davis, which required an annual audit. A certified public accountant audited the fund for the fiscal year ending June 30, 1993, reporting no problems. In November 1994, Davis reported a $1,250 expense for the 1994 audit of the canteen fund, leading the OCLEC to believe an audit had been performed for that year.[2] In 1995 the canteen fund audit was added to the bid package with other Orangeburg County audits, and the county selected a different accounting firm to conduct the audit.

In November 1995, the new auditor reported to the OCLEC that the Detention Center did not have sufficient records to audit the canteen fund. A committee was formed to investigate, and a bookkeeper was hired to put the records into ledger form. Later that month, an OCLEC commissioner reviewed the records and concluded that they did not agree with the monthly reports Davis had presented to the OCLEC.

2. The OCLEC later discovered the $1,250 expenditure was for inmate uniforms for the kitchen and no audit had been performed that year.

In early January 1996, the bookkeeper and several OCLEC commissioners met with Davis and Gordon at the Detention Center to inventory the canteen. Davis allegedly told them he did not consider it necessary to set up the account on a ledger system and insisted the fund could be audited as it was. Contrary to Davis's position, OCLEC commissioners testified that they spent in excess of 100 hours trying to reconcile the records, and eventually concluded more than $30,000 was missing.

At the OCLEC's meeting in January 1996, the OCLEC unanimously adopted the investigating committee report recommending that Davis be discharged for cause, that Gordon be reprimanded, that the matter be referred to the Solicitor's office, and that a State Law Enforcement Division (SLED) investigation be requested. The OCLEC Chairman then instructed Gordon to immediately terminate Davis's employment, which Gordon did. Subsequently, Gordon sent Davis an official termination letter which stated the reason for Davis's termination as "incompetence and violation of policy in handling the Canteen Fund." It further stated, "This decision is based on an investigation of the Canteen Fund precipitated by the 1995 Auditor's Report."

Davis grieved his termination to the OCLEC's grievance committee, which denied his grievance. Davis then filed this action for breach of employment contract and related claims against Gordon and two OCLEC commissioners. The trial court granted summary judgment on the related claims.

Davis's breach of contract claim was tried before a jury. The jury returned a verdict for Davis in the amount of $305,000. The OCLEC moved to alter or amend the judgment under Rule 59(e), SCRCP, which the trial court denied. This appeal follows.

## LAW / ANALYSIS

The OCLEC argues the trial court erred in failing to grant a directed verdict, or a judgment notwithstanding the verdict because Davis failed to present evidence sufficient to raise a factual issue as to alteration of his at-will employment status. We agree.

■ When reviewing the denial of a motion for directed verdict or judgment notwithstanding the verdict, we must consider the evidence in the light most favorable to the non-moving party. *Brady Dev. Co. v. Town of Hilton Head Island,* 312 S.C. 73, 78, 439 S.E.2d 266, 269 (1993); *McGill v. Univ. of South Carolina,* 310 S.C. 224, 226, 423 S.E.2d 109, 111 (1992). A directed verdict or judgment notwithstanding the verdict should not be granted unless only one reasonable inference can be drawn from the evidence. *Brady Dev. Co.,* 312 S.C. at 78, 439 S.E.2d at 269. "Our courts have recognized that when only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court." *Small v. Pioneer Mach., Inc.,* 329 S.C. 448, 461, 494 S.E.2d 835, 841 (Ct.App.1997).

Davis asserts two bases for arguing that his original at-will status was altered by the OCLEC. These are: 1) the adoption of an OCLEC policy manual; and 2) a statement he maintains Director Gordon made to him when he was hired. In response, the OCLEC argues that the policy manual relied upon by Davis was never adopted by the OCLEC, is inapplicable under the circumstances, and is too vague to have altered Davis' at-will status. The OCLEC also maintains that Gordon's alleged statement was insufficient to establish a contract altering the at-will relationship.

■ The doctrine of employment at-will has long been recognized in the State of South Carolina. *See Shealy v. Fowler,* 182 S.C. 81, 188 S.E. 499 (1936). The doctrine dictates that employment for an indefinite term is terminable by either the employee or the employer for any reason or for no reason without incurring liability for wrongful discharge. *Culler v. Blue Ridge Elec. Coop.,* 309 S.C. 243, 245, 422 S.E.2d 91, 92 (1992); *Hudson v. Zenith Engraving Co.,* 273 S.C. 766, 769, 259 S.E.2d 812, 813 (1979).

■ South Carolina has carved out two explicit exceptions to this general rule. First, an employee has recourse against an employer for termination in violation of public policy. *Small v. Springs Indus., Inc.,* 300 S.C. 481, 484, 388 S.E.2d 808, 810 (1990). Second, an employee has a cause of action against an employer who contractually alters the at-will relationship and terminates the employee in violation of the

contract. *Id.* In certain situations, termination of an at-will employee may give rise to a cause of action for wrongful termination where the at-will status of the employee is altered by the terms of an employee handbook. *Id.* Thus, while the doctrine of employment at-will is the law in this state, our supreme court has held that a jury can consider an employee handbook in deciding whether the employer and the employee had a limiting agreement on the employee's at-will employment status. *Kumpf v. United Tel. Co.*, 311 S.C. 533, 536, 429 S.E.2d 869, 871 (Ct.App.1993).

█ In order to prove the existence of a contract, the employee must show "the following three elements: 1) a specific offer, 2) communication of the offer to the employee, and 3) performance of job duties in reliance on the offer." *Prescott v. Farmers Tel. Coop.*, 335 S.C. 330, 336, 516 S.E.2d 923, 926 (1999).

## I. Policy Manual

With regard to the policy manual, Davis argues the OCLEC contractually altered his at-will status through promises contained in the Detention Center's policy and procedure manual.[3] He maintains the OCLEC breached the terms of his employment contract in at least two ways.

First, Policy A–260 of the manual states the "initiation of discipline is the responsibility of the Director." Davis asserts that his discipline could, therefore, only be instigated by Director Gordon with the OCLEC serving as the final approving authority. Accordingly, the OCLEC improperly terminated him by not following this procedure.

Second, he contends the OCLEC violated Policy A–235 when it discharged him without justification. Davis maintains that Policy A–235 alters his at-will employment to a contract for employment with termination only for cause.

The OCLEC minutes do not reflect that the policies Davis relies upon were ever adopted by the OCLEC. The minutes are silent on the issue. At trial, the OCLEC objected to the introduction of the manual into evidence, which was overruled. On appeal, the OCLEC argues this was error. We agree.

---

3. This manual purports to be in the nature of an employee handbook.

■ Parol evidence may not be admitted to explain, enlarge or contradict minutes which are complete and unambiguous on their face. *Berkeley Elec. Coop. v. Town of Mt. Pleasant,* 308 S.C. 205, 208, 417 S.E.2d 579, 581 (1992). "Otherwise, parol evidence could render official minutes uncertain or unreliable so that the minutes would fail to afford dependable evidence of the proceedings. . . ." *Id.; see also Moore v. Postal Telegraph–Cable Co.,* 202 S.C. 225, 236, 24 S.E.2d 361, 365 (1943) (stating that where company's Pension and Benefit Committee was required to keep minutes of meetings, the original minutes of the meetings were the best evidence of changes in the pension plan and parol testimony was properly excluded). A court must initially review the minutes to determine whether the minutes are incomplete or ambiguous and whether parol evidence is admissible to then clarify them. *Berkeley Elec. Coop.,* 308 S.C. at ' 209, 417 S.E.2d at 582 (holding that, after review, the minutes were unambiguous and the trial judge erred in admitting parol evidence).

The OCLEC enabling ordinances require a full and accurate account of the OCLEC's actions and doings at all times. Additionally, all public bodies are required to keep written minutes of their public meetings recording "the substance of all matters proposed, discussed or decided." S.C.Code Ann. § 30–4–90(a)(3) (1991).

■ Davis testified that he was responsible for preparing and presenting the minutes of OCLEC meetings. He offered into evidence OCLEC minutes recording the adoption of other policies, including the canteen fund policy. However, these minutes do not show that the OCLEC adopted the policies upon which Davis relies. Davis's parol testimony that the policies were adopted and in force was not admissible on this point. *Berkeley Elec. Coop.,* 308 S.C. at 208, 417 S.E.2d at 581.

Davis argues that parol evidence was admissible because the minutes are ambiguous and the policies do not contradict the minutes. We disagree. The minutes in the record are not ambiguous on their face. There is nothing to suggest that the OCLEC discussed and adopted policies not mentioned in the minutes. Silence on the issue does not create ambiguity. It

merely reflects that no official action was discussed or taken. To allow parol evidence to contradict this conclusion would undermine the integrity of the official record, in contravention of our supreme court's clear mandate in *Berkeley Electric Cooperative*.

Davis further argues that OCLEC Commissioner Andrea Bowers testified the policies of the commission had to be "redone" when the new OCLEC was created, supporting his contention that the OCLEC reenacted all of its old policies. However, even if this parol evidence were admissible, Bowers also testified that not all of the policies were "redone."

Finally, Davis argues that the presence of a date stamp on the pertinent policies supports his contention that the policies were adopted by the OCLEC and that the minutes are, therefore, ambiguous. Again, this is inadmissible parol evidence.[4]

 Because Davis' testimony regarding the adoption of the policies was inadmissible parol evidence, he has failed to establish a question for the jury as to whether the OCLEC made him a specific offer altering his at-will status through those policies.

## II. Oral Assurance

 Davis maintained at trial and on appeal that Gordon made a statement altering his at-will status to an employment contract allowing for termination only for cause. Davis testified that Gordon told him he could "only be terminated for cause." Davis argues this evidence is sufficient to create a factual issue as to alteration of his at-will status. We disagree. Assuming Gordon did make the statement, we find it insufficient by itself to provide a factual issue as to alteration of Davis's at-will employment status.

 "[T]he at-will status of an employee may be altered by an oral contract of definite employment." *Prescott,*

---

4. Even if admissible, Davis himself testified that the date stamped on the policies was an arbitrary date, having nothing to do with the effective date of the policy. Furthermore, the Canteen Fund Policy, which was adopted according to the minutes of the June 1993 meeting, does not have a date stamp on it. Consequently, we fail to see how this stamped date infers adoption by the OCLEC.

335 S.C. at 335, 516 S.E.2d at 926. "To be binding, an offer must be definite." *Id.* at 336–37, 516 S.E.2d at 926. One must show a specific offer, a communication of the offer to him, and performance of job duties in reliance on the offer. *Id.* at 336, 516 S.E.2d at 926.

The statement Davis attributed to Gordon is not definite enough to alter his at-will status. *See id.; see also Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998) (statements that an employee will be discharged only for "good reason" or "good cause" do not form a binding contract "when there is no agreement on what those terms encompass. Without such agreement the employee cannot reasonably expect to limit the employer's right to terminate him.").

## CONCLUSION

Davis failed to present sufficient evidence of an alteration of his at-will employment status to establish a question for the jury. Therefore, the trial court erred in failing to grant the OCLEC's motion for directed verdict. For the foregoing reasons the final judgment is

**REVERSED.**[5]

STILWELL and SHULER, JJ., concur.

---

**5.** Because of our disposition of this question, it is unnecessary to address the OCLEC's remaining issues on appeal.