603 S.E.2d 605

**Katherine BURNS, Appellant,**

v.

**UNIVERSAL HEALTH SERVICES, INC., Respondent.**

No. 3869.

Court of Appeals of South Carolina.

Heard Sept. 14, 2004.

Decided Sept. 27, 2004.

224

V.M. Manning Smith, of Beaufort, for Appellant.

Richard J. Morgan and Robyn W. Madden, of Columbia, for Respondent.

ANDERSON, J.

Katherine Burns appeals the trial court's decision granting Universal Health Service's (Universal) motion for a judgment notwithstanding the verdict (JNOV) on Burns' action for

breach of the implied covenant of good faith and fair dealing. In addition, Burns argues the trial court erred in refusing to admit evidence of the deterioration and quality of patient care at the hospital after Universal purchased the hospital and took over the management thereof. We reverse and reinstate the jury verdict.

## *FACTUAL/PROCEDURAL BACKGROUND*

This action arises out of Universal's termination of Burns' employment. The issue before this Court is Burns' contention that certain hospital policies and procedures created an employee contract which altered the at-will employment relationship.

Burns began her employment with Aiken Regional Medical Centers in February 1989. Universal purchased Aiken Regional Medical Centers from Hospital Corporation of America in July of 1995. For approximately eight years, Burns remained employed with the hospital as a nurse. On January 21, 1997, Universal terminated Burns' employment due to her "insubordinate refusal to meet with the Hospital to discuss a confidential patient care issue." Burns claims her termination was the result of tension between Universal and herself after she expressed concern regarding the quality of health care services being provided by the hospital after Universal purchased the hospital in July 1995.

Upon employment with the hospital in 1989, Burns received an employee handbook. On February 27, 1989, she signed an acknowledgment card indicating she read and understood the acknowledgment card and agreed to read the employee handbook. The acknowledgment card provided in part:

I understand that the purpose of this Handbook is to provide employees of the Hospital with general information regarding the policies and procedures the Hospital attempts to follow in most cases but that **neither this handbook nor any provision of this handbook is an employment contract or any other type of contract.** . . . .

I understand and agree that my employment at HCA Aiken Regional Medical Centers is for an indefinite term and is terminable at any time at the will of either myself or the Hospital for any reason.

(emphasis in original). Additionally, Burns signed a Confidentiality Statement in 1989 declaring she understood that violating patient confidentiality was grounds for immediate termination. In 1993, Burns signed another acknowledgment card and receipt for handbook, which stated in part:

The purpose of this Handbook is to provide associates of the Hospital with general information regarding the personnel guidelines the Hospital attempts to follow in most cases, but NEITHER THIS HANDBOOK NOR ANY PROVISION OF THIS HANDBOOK IS AN EMPLOYMENT CONTRACT NOR ANY OTHER TYPE OF CONTRACT.....

All associates at Aiken Regional Medical Centers are employed for an indefinite term, and employment may be terminated, with or without cause, at any time, at the will of either the associate or the Hospital.

During her employment with Aiken Regional Medical Centers, Burns received Form Number HR116, which set forth the procedures for disciplinary actions. Universal adopted HR116 in July of 1995 and amended HR116 on August 3, 1997. Form Number HR116, as amended by Universal, is titled "DISCIPLINARY ACTIONS" and articulates:

### I. PURPOSE

To establish definitive policies for the initiation of disciplinary and corrective actions and termination of employment.

### II. POLICY

Disciplinary actions must be administered in accordance with established Human Resources policies, procedures and guidelines, and without regard to race, sex, age, religion, national origin or disability.

Employment may only be terminated with the prior approval of the Director of Human Resources or authorized designee.

### III. TYPES OF DISCIPLINARY ACTIONS

A. Aiken Regional Medical Centers has developed the following progressive disciplinary approach which may be utilized when violations of hospital policy or practice of Service Excellence standards occur. The following progressive steps should generally be followed when an associate has disciplinary problem(s):

1. Written counseling session.
2. Written warning (Win Win).
3. Final warning.
4. Discharge.

The attached document, Rules of Conduct, gives general guidelines for administering disciplinary actions for common infractions. These guidelines should be used whenever possible to ensure that associates receive fair and consistent treatment in performance and disciplinary related problems. Disciplinary problems which are not addressed in the Rules of Conduct, or those involving extenuating circumstances may be addressed with the Director of Human Resources or an authorized designee.

In any given case, the circumstances of the specific incident will dictate the severity of the disciplinary actions, and nothing in this policy should be construed, [sic] otherwise Aiken Regional Medical Centers reserves the right to administer disciplinary action up to and including termination as it deems appropriate.

All terminations must be reviewed and approved by the Director of Human Resources or authorized designee prior to termination.

Disciplinary actions should be recorded on an Associate Management Record form or in memo form, provided that all points are adequately explained.

B. For the documentation to be complete, the following points should be noted:

1. A specific date, time and location of incident(s).

2. A complete description of the negative performance or behavior exhibited by the associate—the problem. (Use additional paper as an attachment if necessary to adequately describe the problem.)

3. Consequences of that action or behavior on the associate's total work performance and/or operation of the associate's work unit.

4. Reference to prior discussion(s) with the associate.

5. Disciplinary action to be taken and specific improvement expected.

6. Consequences, if improvement is not made.

7. The associate's reaction to the disciplinary action, and an offer to submit a written rebuttal.

8. Note witnesses, if appropriate.

C. Warnings should be reviewed with associates within 24 hours of the infraction, or as soon after completion of an investigation as possible. If greater than 24 hours, document reason why action is delayed.

D. The associate should sign the document as an acknowledgment that the incident was reviewed with them. Associates are encouraged to write down their improvement action plan in the space provided.

E. All written and final disciplinary action documentation must be accompanied by an Action Plan for Problem Employee Management form (available in Human Resources) or a Win Win Partnership Agreement.

F. All official disciplinary action documents must be forwarded to Human Resources to be filed in the associate's file within three (3) working days following the counseling session. Failure to submit disciplinary action forms to Human Resources in a timely manner may limit our recourse in dealing with future disciplinary problems.

The "Rules of Conduct" form is bifurcated: (1) Category I (Causes for Immediate Termination); and (2) Category II (Cause for Counseling or Termination for Continuous Violations). Category I provides:

1. Patient abuse or neglect.

2. Discourteous behavior towards patients, visitors, physicians, management personnel, co-workers, or volunteers.

3. Two (2) consecutive scheduled days absence without notifying your immediate supervisor.

4. Removing any hospital property from the premises without express permission from a member of management.

5. Refusal to perform work assignments as directed by your supervisor or other members of management, including hospital-wide activities and programs.

6. Sexual harassment or harassment of another associate, patient or guest.

7. Possession, consumption, selling, offering for sale, or being under the influence of alcoholic beverages, intoxicants, narcotics or non-prescribed barbiturates on Aiken Regional Medical Centers premises. Associates must communicate to their supervisor prior to starting job assignments if they are taking prescribed medications which could impair their mental or physical ability to perform job tasks. '

8. Failure to submit to a drug screen based on our Drug Free Workplace policy.

9. Unauthorized possession or use of firearms, weapons, or explosives on hospital premises.

10. Immoral or indecent conduct on Aiken Regional Medical Centers premises or off the premises when an associate can be identified as being an associate with the hospital as a result of wearing a uniform, name badge, or other identifying attire.

11. Damage to hospital property.

12. Clocking in or out on another associate's timebadge, or asking another associate to clock in or out for you, falsifying or altering time, personnel records, or other hospital documents.

13. Sleeping during work hours.

14. Unauthorized access, release, or copying of hospital records, including patient medical charts or divulging any medical information to non-deserving personnel.

15. Failure to report, to your immediate supervisor, gifts or other items of value from patients, patient's relatives, or Aiken Regional Medical Centers' vendors. Acceptance of cash as a gift for any amount is prohibited.

16. Fighting, provocation that leads to fighting, or other forms of disorderly conduct.

17. Falsifying or misrepresentation of information on employment applications, resumes, or other hospital documents.

Burns filed this action on December 19, 1997, alleging wrongful termination, breach of the implied covenant of good faith and fair dealing, civil conspiracy, defamation, and intentional infliction of emotional distress. Universal filed a motion to dismiss, motion to strike, and a motion for a more definite

statement in addition to an answer in response to Burns' amended complaint. Several of these motions were granted. Burns appealed from the trial court's order. The court of appeals, in *Burns v. Universal Health Servs., Inc.,* 340 S.C. 509, 532 S.E.2d 6 (Ct.App.2000), reversed the circuit court's order for sanctions and remanded.

Thereafter, Burns filed a Second Amended Complaint averring breach of the implied covenant of good faith and fair dealing, civil conspiracy, slander/defamation, and intentional infliction of emotional distress. Universal moved for summary judgment on the causes of action asserted in the Second Amended Complaint. Universal's motion for summary judgment was granted on the issue of intentional infliction of emotional distress. Burns withdrew her civil conspiracy claim.

Burns proceeded to trial on the claims for breach of the implied covenant of good faith and fair dealing and slander/defamation. The jury returned a verdict for Burns on her claim for breach of the implied covenant of good faith and fair dealing in the amount of $32,000 and a verdict for Universal on the slander/defamation claim. Universal filed a motion for JNOV. Approximately six weeks after the trial, the circuit judge granted the JNOV. In his order, the trial judge ruled:

> Based on this evidence the Court finds that the only inferences to be drawn from the trial evidence are: (1) that the hospital maintained and preserved the at-will employment relationship; (2) Plaintiff failed to identify any policy that she relied on that supports an exception to the employer's preservation of the at-will relationship; (3) that she was provided actual notice of the terms of the at-will relationship in conspicuous language; (4) at no time during her employment did the hospital ever have mandatory language in any document that would alter the at-will relationship; and (5) at no time during her employment at the hospital did the hospital relinquish the discretion to review any individual matter and take steps it believed appropriate to the circumstances.

### STANDARD OF REVIEW

In ruling on a motion for JNOV, the trial judge cannot disturb the factual findings of a jury unless a review of

the record discloses no evidence which reasonably supports them. *Horry County v. Laychur*, 315 S.C. 364, 434 S.E.2d 259 (1993); *Force v. Richland Mem'l Hosp.*, 322 S.C. 283, 471 S.E.2d 714 (Ct.App.1996). In making this determination, the judge must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Gilliland v. Doe*, 357 S.C. 197, 592 S.E.2d 626 (2004); *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 494 S.E.2d 835 (Ct.App.1997). The trial court must deny the motion when the evidence yields more than one inference or its inferences are in doubt. *Jinks v. Richland County*, 355 S.C. 341, 585 S.E.2d 281 (2003); *Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000); *see also Force*, 322 S.C. at 284, 471 S.E.2d at 715 (stating that if more than one reasonable inference exists, jury verdict must stand).

In deciding a motion for JNOV, the trial judge is concerned with the existence of evidence, not its weight. *Curcio v. Caterpillar, Inc.*, 355 S.C. 316, 585 S.E.2d 272 (2003). When considering a JNOV motion, neither an appellate court, nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony or the evidence. *Id.* at 320, 585 S.E.2d at 274; *Reiland v. Southland Equip. Serv., Inc.*, 330 S.C. 617, 500 S.E.2d 145 (Ct.App.1998).

A motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict. *Gastineau v. Murphy*, 331 S.C. 565, 503 S.E.2d 712 (1998); *Welch*, 342 S.C. at 300, 536 S.E.2d at 419. If more than one inference can be drawn from the evidence, the grant of a JNOV is improper and the case must be left to the jury's determination. *Gastineau*, 331 S.C. at 568, 503 S.E.2d at 713. The verdict will be upheld if there is any evidence to sustain the factual findings implicit in the jury's verdict. *Shupe v. Settle*, 315 S.C. 510, 445 S.E.2d 651 (Ct.App.1994). The appellate court will reverse the trial court's ruling on a JNOV motion only when there is no evidence to support the ruling or where the ruling is controlled by an error of law. *Hinkle v. National Cas. Ins. Co.*, 354 S.C. 92, 579 S.E.2d 616 (2003); *see also Strange v. South Carolina Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 445 S.E.2d 439 (1994) (finding that trial

court can only be reversed by this Court when there is no evidence to support the ruling below).

## LAW/ANALYSIS

### I. Existence of Employment Contract

■■ Burns maintains the trial court erred in granting the JNOV and concluding there was no evidence in the record, no matter how slight, nor any inferences to be drawn therefrom on which the jury based its verdict for Burns. Specifically, Burns contends there is evidence in the record from which a jury could reasonably infer that certain written policies and procedures created an employment contract between Burns and Universal. We agree.

■■ South Carolina recognizes the doctrine of employment at-will. *Prescott v. Farmers Tel. Coop., Inc.,* 335 S.C. 330, 516 S.E.2d 923 (1999); *Shealy v. Fowler,* 182 S.C. 81, 188 S.E. 499 (1936). Under this doctrine, either party may terminate the employment contract at any time, for any reason, or no reason at all. *Prescott,* 335 S.C. at 334, 516 S.E.2d at 925; *Baril v. Aiken Reg'l Med. Ctrs.,* 352 S.C. 271, 573 S.E.2d 830 (Ct.App. 2002).

■■ South Carolina courts have carved out exceptions to the at-will employment doctrine. *See Small v. Springs Indus., Inc.,* 300 S.C. 481, 388 S.E.2d 808 (1990) (*Small II*); *Davis v. Orangeburg–Calhoun Law Enforcement Comm'n,* 344 S.C. 240, 542 S.E.2d 755 (Ct.App.2001). First, an employee has recourse against an employer for termination in violation of public policy. *Small II,* 300 S.C. at 484, 388 S.E.2d at 810; *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213 (1985). Second, an at-will employee may not be terminated for exercising constitutional rights. *Prescott,* 335 S.C. at 335 n. 3, 516 S.E.2d at 925 n. 3; *Moshtaghi v. The Citadel,* 314 S.C. 316, 443 S.E.2d 915 (Ct.App.1994). Finally, an employee has a cause of action against an employer who contractually alters the at-will relationship and terminates the employee in violation of the contract. *Davis,* 344 S.C. at 246–47, 542 S.E.2d at 758. An employer and employee may contractually alter an at-will employment relationship, and as a result, limit the ability of either party to terminate the

employment relationship without incurring liability. *See Small v. Springs Indus., Inc.,* 292 S.C. 481, 357 S.E.2d 452 (1987) *(Small I ); Baril,* 352 S.C. at 281, 573 S.E.2d at 836; *see also Culler v. Blue Ridge Elec. Coop., Inc.,* 309 S.C. 243, 422 S.E.2d 91 (1992) (emphasizing that the doctrine of employment at-will in its pure form allows an employer to discharge an employee for good reason, no reason, or bad reason without incurring liability). For example, an employee handbook [1] may create a contract altering an at-will arrangement. *See Small II,* 300 S.C. at 484, 388 S.E.2d at 810; *Baril,* 352 S.C. at 281, 573 S.E.2d at 836; *see also Davis,* 344 S.C. at 247, 542 S.E.2d at 758 (instructing that in certain situations, termination of at-will employee may give rise to cause of action where at-will status of employee is altered by terms of employee handbook).

While the doctrine of employment at-will is the law in this state, our supreme court has held that a jury can consider an employee handbook in deciding whether the employer and the employee had a limiting agreement on the employee's at-will employment status. *See Small I,* 292 S.C. at 486, 357 S.E.2d at 455. "Because an employee handbook may create an employment contract, the question of whether a contract exists is for a jury when its existence is questioned and the evidence is either conflicting or admits of more than one inference." *Baril,* 352 S.C. at 281, 573 S.E.2d at 836. The determination of whether an employee handbook alters an employee's at-will status is a question for the jury. *Horton v..*

---

1. This Court notes the recent amendment to the Code of Laws of South Carolina regarding employee handbooks. However, this amendment is not applicable to the current action as it was enacted subsequent to the institution of this action. Section 41–1–110 of the South Carolina Code provides:

It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent after June 30, 2004, shall not create an express or implied contract of employment if it is conspicuously disclaimed. For purposes of this section, a disclaimer in a handbook or personnel manual must be in underlined capital letters on the first page of the document and signed by the employee. For all other documents referenced in this section, the disclaimer must be in underlined capital letters on the first page of the document. Whether or not a disclaimer is conspicuous is a question of law.

Act No. 185, 2004 S.C. Acts 1841.

*Darby Elec. Co.,* 360 S.C. 58, 599 S.E.2d 456 (2004); *Fleming v. Borden, Inc.,* 316 S.C. 452, 450 S.E.2d 589 (1994).

 "The presence of promissory language and a disclaimer in the handbook make it ambiguous and subject to more than one interpretation." *Baril,* 352 S.C. at 281–82, 573 S.E.2d at 836; *see also Conner v. City of Forest Acres,* 348 S.C. 454, 560 S.E.2d 606 (2002) (concluding that summary judgment is inappropriate in most instances when handbook contains both a disclaimer and promises); *Fleming,* 316 S.C. at 463–64, 450 S.E.2d at 596 (explaining that an employee handbook containing both a disclaimer and promissory language should be viewed as inherently ambiguous). When an employee handbook contains promissory language and a disclaimer, a jury should interpret whether the handbook creates or alters an existing contractual relationship. *Horton,* 360 S.C. at 67, 599 S.E.2d at 460.

In *Conner v. City of Forest Acres,* the South Carolina Supreme Court, in an excellent academic review of the law in regard to handbook language, edified:

Relying primarily on *Fleming [v. Borden,* 316 S.C. 452, 450 S.E.2d 589 (1994) ], the Court of Appeals in the instant case found that summary judgment was inappropriate. We agree. While the City argues that its handbook contained disclaimers which were effective as a matter of law and that Conner signed acknowledgments of her at-will status, the fact remains that the handbook outlines numerous procedures concerning progressive discipline, discharge, and subsequent grievance. The language in the handbook is mandatory in nature and therefore a genuine issue of material fact exists as to whether Conner's at-will status was modified by the policies in the handbook. *See id.* (summary judgment is not appropriate where disclaimers and mandatory promises are both found in handbook).

*Id.* at 464, 560 S.E.2d at 611 (footnote omitted).

Universal asserts the 1989 acknowledgment card and the 1993 acknowledgment card and receipt for handbook, both of which were signed by Burns, contained "language retaining the Hospital's at-will rights." Initially, we note these documents pre-date any legal nexus in regard to Burns and Universal because Universal did not purchase the hospital

until 1995. The acknowledgment cards were prepared by Universal's predecessor in interest, Hospital Corporation of America. Burns neither sued her former employer, nor did she have any relationship with her former employer at the time of her termination.

Universal's reason for immediate termination of Burns was "for her insubordinate refusal to meet with the Hospital to discuss a confidential patient care issue involving one of [Burns'] patients." We have reviewed Category I of the Rules of Conduct with exactitude and, indisputably, the reason articulated by Universal for immediate termination of Burns is *NOT* contained within the enumeration of Category I offenses.

Alternatively, even if the court gives some efficacy to the documents, there is ambiguity and confliction in language and verbiage contained in the handbook. Here, the employee handbook contains disclaimers in the acknowledgment cards that the handbook is not an employment contract. However, there are hospital policies that clearly promise specific procedures for disciplinary action will be followed. Form Number HR116 mandates certain procedures in addressing disciplinary problems and terminating employees. The use of the words "must" and "should" throughout HR116 provide mandatory disciplinary conditions precedent to termination. HR116 promises actions such as a written counseling session, a written warning within twenty-four hours of an infraction, a final warning, approval of termination by the director of human resources, and recordation of disciplinary actions. This type of promissory language creates an ambiguity and leads to more than one reasonable inference regarding the existence of an employment contract.

In addition, Universal's actions in handling Burns' termination inferentially demonstrate an employment contract. For example, after Burns was terminated, her superiors created a written warning in compliance with the handbook and placed it in her file. This raises an inference that Universal thought it was required to document the termination in compliance with its own policy.

Our supreme court, in *Horton v. Darby Elec. Co.*, 360 S.C. 58, 599 S.E.2d 456 (2004), recently affirmed the trial court's grant of summary judgment to an employer where there was

no genuine issue of fact regarding the existence of an implied contract of employment based on the employer's policy manual. The trial court found summary judgment was proper on the basis there was no contract altering the employee's at-will status. The *Horton* court held:

> Respondent's manual exemplifies the appropriate manner in which to give employees a guide regarding their employment without altering the at-will employment relationship. The manual contained conspicuous disclaimers and appellant understood those disclaimers. Further, the disciplinary procedure contained permissive language and did not provide for mandatory progressive discipline. Appellant, who himself had the responsibility of interpreting the manual, stated he interpreted the manual as not limiting his ability to terminate employees. Accordingly, the policy manual did not alter the employment at-will relationship between appellant and respondent.

*Id.* at 67–68, 599 S.E.2d at 460–61 (footnote omitted). We note this case is distinguishable from *Horton.* In the instant case, the handbook's procedures concerning progressive discipline are couched in mandatory terms; where as, the disciplinary procedure in *Horton* contained permissive language and did not provide for mandatory progressive discipline. Moreover, the appellant in *Horton,* who was responsible for interpreting the manual, acknowledged he interpreted the manual as not limiting his ability to terminate employees.

In the case *sub judice,* the handbook's promissory language regarding disciplinary procedures, as well as Universal's actions in terminating Burns, give rise to more than one reasonable inference concerning the creation of an employment contract. *See Gastineau v. Murphy,* 331 S.C. 565, 503 S.E.2d 712 (1998) (ruling that if more than one inference can be drawn from the evidence, the grant of a JNOV is improper and the case must be left to the jury's determination). The jury in this case considered all the evidence and returned a verdict in Burns' favor. Luculently, all factual disputations in the evidentiary trial record *must* be resolved by the jury, not the court. After an extensive review of the record before us, we find there is evidence to sustain the factual findings implicit in the jury's verdict. *See Shupe v. Settle,* 315 S.C. 510, 445 S.E.2d 651 (Ct.App.1994).

■ The courts exercise great self-restraint in interfering with the constitutionally mandated process of jury decision. *See Small v. Springs Indus., Inc.,* 292 S.C. 481, 357 S.E.2d 452 (1987) (*Small I*). Erroneously and in direct contravention of the law as it relates to JNOV, the judge in the case at bar obstructed and usurped the duty imposed upon the jury to resolve all factual issues. The role of the trial judge is to deny the motion for JNOV if there is *any* evidence to sustain the factual findings implicit in the jury's verdict. Indisputably, this trial record encapsulates a plethora of evidence involving factual issues as to the existence of an employment contract. Consequently, the trial court erred in granting the JNOV on the issue of whether an employment contract existed between Burns and Universal.

## II. Hospital's Actions in Terminating Burns' Employment

■ Burns argues her termination was the result of tension between Universal and herself after she complained about staffing issues and expressed concernment regarding the quality of health care services being provided by the hospital after Universal purchased the hospital in July 1995.

■ When an employment contract only permits termination for cause, the appropriate test on the issue of breach focuses on whether the employer had a " 'reasonable good faith belief that sufficient cause existed for termination.' " *Conner v. City of Forest Acres,* 348 S.C. 454, 464, 560 S.E.2d 606, 611 (2002); *Baril v. Aiken Reg'l Med. Ctrs.,* 352 S.C. 271, 283, 573 S.E.2d 830, 837 (Ct.App.2002). "[T]he fact finder must not focus on whether the employee actually committed misconduct; instead, the focus must be on whether the employer reasonably determined it had cause to terminate." *Conner,* 348 S.C. at 464–65, 560 S.E.2d at 611; *Baril,* 352 S.C. at 283, 573 S.E.2d at 837 (internal quotations omitted).

### a. Reasonable Good Faith

The disciplinary procedure set out in the employee handbook provided for mandatory progressive discipline. Due to the presence of promissory language and disclaimers, the employee handbook in the present case is ambiguous and

subject to more than one interpretation. *See Baril*, 352 S.C. at 281–82, 573 S.E.2d at 836. HR116 promises that certain procedures will be followed when dealing with disciplinary problems and prior to terminating employees. Universal did not follow the specific procedures for disciplinary action mandated by HR116 in effectuating Burns' termination. Universal's reason for immediate termination of Burns was her "insubordinate refusal to meet with the Hospital to discuss a confidential patient care issue." A reading of Category I of the Rules of Conduct reveals that the reason espoused by Universal for immediate termination of Burns is *NOT* contained within the litany of Category I offenses. Moreover, the fact that Burns' superiors created a written warning in compliance with the handbook and placed it in her file *after* Burns was terminated implies that Universal thought it was required to document the termination in compliance with its own policy.

Viewing the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to Burns, we find the trial court erred in granting the motion for JNOV because the evidence yields more than one reasonable inference as to whether Universal acted with good faith in terminating Burns. *See Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000) (finding trial court must deny JNOV motion when evidence yields more than one inference or its inferences are in doubt).

### b. Sufficient Cause

Universal alleges it terminated Burns "for her insubordinate refusal to meet with the Hospital to discuss a confidential patient care issue involving one of [Burns'] patients." Universal contends it followed its policies and procedures in terminating Burns, specifically, the Confidentiality Statement, HR116, and the Rules of Conduct. Burns responds by arguing that any claim of insubordination on her part involving a failing to meet is rank subterfuge. The jury believed the testimony of Burns and rejected outright Universal's contention. The granting of the JNOV motion by the circuit judge is imbued with credibility determinations which fly in the face of JNOV responsibilities. *See Curcio v. Caterpillar, Inc.*, 355 S.C. 316, 585 S.E.2d 272 (2003) (stating that when considering a JNOV motion, neither an appellate court, nor the trial court

has authority to decide credibility issues or to resolve conflicts in the testimony or the evidence).

We note the Confidentiality Statement relied on by Universal was signed by Burns in 1989 and was prepared by her former employer, not Universal. Viewing the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to Burns, we find the trial court erred in granting the motion for JNOV because the jury verdict resolved the reasonable inferences against Universal.

## *CONCLUSION*

Accordingly, the trial court's decision to grant the JNOV is **REVERSED**[2] **and the JURY VERDICT is REINSTATED.**

GOOLSBY and WILLIAMS, JJ., concur.

---

**2.** Based on our decision that the trial court erred in granting the JNOV, we do not reach the remaining issue on appeal. *See Futch v. McAllister Towing,* 335 S.C. 598, 518 S.E.2d 591 (1999) (ruling appellate court need not address remaining issues when disposition of prior issue is dispositive).