18798

Frampton GUNNELS, Respondent, v. AMERICAN LIBERTY INSURANCE COMPANY, Appellant.

(161 S. E. (2d) 822)

*Messrs. Fulmer, Barnes, Berry & Austin,* of Columbia
*for Appellant,*

*Messrs, Blatt, Fales & Peeples,* of Barnwell, *for Respondent,*

June 4, 1968.

BUSSEY, Justice.

In this action, arising under the South Carolina Uninsured Motorist Law, the plaintiff Gunnels seeks to recover from his liability insurer, American Liberty Insurance Company (hereinafter referred to simply as American), to the extent of his uninsured motorist coverage, a judgment obtained by Gunnels against one Hewitt in the State of North Carolina. Appeal is from an order of the circuit court overruling a demurrer to plaintiff's complaint.

The facts necessary to an understanding of the single issue are as follows. A collision between vehicles of Gunnels

and Hewitt occurred in North Carolina in February 1965, and American was notified. Hewitt had liability coverage with Republic Casualty Company. Gunnels brought action against Hewitt, but Hewitt being then an insured motorist, copies of the pleadings were not served upon American. Hewitt counterclaimed and American participated in the trial of the case in defense of such counterclaim, Hewitt being represented by counsel retained by Republic. Shortly after a verdict and judgment in favor of Gunnels, Hewitt became an uninsured motorist by virtue of Republic becoming insolvent, and involved in delinquency proceedings, suspension and receivership. Sec. 46-750.31, 1967 Code Supplement. Payment of Gunnels' judgment, to the extent of his uninsured motorist coverage, was then demanded of American who refused payment, and this action followed.

American demurred to the complaint on the ground that it was not served with a copy of the summons and complaint in the tort action against Hewitt in accordance with Code Section 46-750.33, 1967 Code Supplement, which, in part, reads as follows:

"* * * No action shall be brought under the uninsured motorist provision unless copies of the pleadings in the action establishing such liability are served in the manner provided by law upon the insurance carrier writing such uninsured motorist provision. * * *"

American contends that literal compliance with the cited Code provision is a condition precedent to any liability on its part under the uninsured motorist endorsement issued by it to Gunnels in compliance with the statute; that the language of the statute is mandatory, clear and unambiguous and not open to construction by the court.

The question raised by American is apparently one of novel impression and no case directly in point has been cited by counsel or come to our attention through independent research. A case somewhat, but not precisely, in point is the decision of the Supreme Court of Virginia in the case

of *McDaniel v. State Farm Mutual,* 205 Va. 815, 139 S. E. (2d) 806. That decision is persuasive not only because of its logic, but because the South Carolina Uninsured Motorist Act is modeled after the Virginia Act. *Laird v. Nationwide Ins. Co.,* 243 S. C. 388, 134 S. E. (2d) 206. The section of the Virginia Act requiring service of process in the tort action upon plaintiff's liability carrier is quite similar to our Code Section. In the McDaniel case, plaintiff's insurer was not served with process at the commencement of the tort action, the defendant being at the time, as here, an insured motorist. The defendant in the tort action, however, forfeited his coverage for lack of cooperation with his insurer prior to the trial of the tort action, and plaintiff's insurer was notified of such fact by letter and the service of a motion for judgment in the tort action. It was held that plaintiff's failure to serve his insurer with process at the commencement of the action did not forfeit his uninsured motorist coverage. The court said:

"The uninsured motorist legislation is remedial in nature, enacted for the benefit of injured persons and is to be liberally construed so that the purpose intended may be accomplished."

The court then went on to point out that it would place a difficult, if not impossible, burden upon a plaintiff to require him to ascertain in advance of bringing his tort action, the fact that the defendant therein would subsequently become an uninsured motorist.

It is, of course, a correct proposition of law that when the terms of a statute are clear and not ambiguous there is no room for construction and the courts are required to apply such according to their literal meaning. Nevertheless, however clear and unambiguous the Code provision relied on by American might appear to be, when such is read alone, it is elementary that such provision has to be considered and construed in connection with the other provisions of the South Carolina Uninsured Motorist

Law. When so considered and construed, we are satisfied that the legislature did not intend the result contended for by American.

The policy and purpose of the entire Act have to be considered and courts are not always confined to the literal meaning of a statute; the real purpose and intent of the lawmakers will prevail over the literal import of the words. See various cases collected under Statutes, Par. 184, West's South Carolina Digest.

The purpose of the South Carolina Uninsured Motorist Law was to provide protection against the peril of injury by an uninsured motorist to an insured motorist, his family and the permissive users of his vehicle. *Laird v. Nationwide Ins. Co.,* 243 S. C. 388, 134 S. E. (2d) 206; *Vernon v. Harleysville Mutual Casualty Co.,* 244 S. C. 152, 135 S. E. (2d) 841. The entire act is remedial in nature and is entitled to a liberal construction to effectuate the purpose thereof. An uninsured motorist endorsement becomes operative when it is ascertained that the responsible operator was uninsured. *Squires v. National Grange Mutual Ins. Co.,* 247 S. C. 58, 145 S. E. (2d) 673. Here the endorsement did not become operative until after judgment against the tort defendant, and promptly after it was ascertained that such had become operative, American was notified. Under these circumstances and considering the Act as a whole, together with its purpose, we see nothing therein evincing an intent on the part of the legislature to require any more of Gunnels.

We, of course, are fully aware of the purposes of the statutory provision requiring service of pleadings in the tort action upon the carrier writing the uninsured motorist coverage, but are convinced that it was never intended to be applicable to the instant factual situation. Moreover, we think the insurer has suffered no prejudice. It was notified of the accident, and had full opportunity to investigate the same. Had it been served with a copy of the pleadings in

the tort action, it is not suggested, nor is there any logical reason to believe, that American would have undertaken the defense of Hewitt or attempted to negotiate a settlement of Gunnels' claim against Hewitt, prior to it being ascertained that Hewitt was an uninsured motorist and the endorsement operative.

For the foregoing reasons, we conclude that the demurrer of American was properly overruled. Having so concluded, we do not reach or consider any issue of waiver by American, dealt with in the order of the lower court and argued on appeal.

The judgment of the lower court is, in result,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.