24032

Ex parte LEXINGTON COUNTY, Respondent. In re The STATE, Respondent v. Johnny O'Landis BENNETT, Petitioner. Ex parte LEXINGTON COUNTY, Respondent. In re The STATE, Respondent, v. Raymond PATTERSON, Jr., Petitioner.

(442 S.E. (2d) 589)

Supreme Court

*H. Wayne Floyd,* West Columbia, *H. Patterson McWhirter,* Lexington, and *SC Office of Appellate Defense, for petitioner Johnny O'Landis Bennett.*

*John D. Delgado* and *Nathaniel Roberson,* of *Delgado & Roberson, Elizabeth Scott Moise,* of *Nelson, Mullins, Riley & Scarborough,* Columbia, and *Stephen R. Soltis, Jr.,* Lexington, *for petitioner Raymond Patterson, Jr.*

*Robert E. Lyon, Jr.* and *Robert S. Croom, S.C. Ass'n of Counties,* Columbia, *amicus curiae.*

*Jeffrey M. Anderson,* of *Bouknight, Nicholson, Davis, Frawley & Anderson,* Lexington, *T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Chief Deputy Atty. Gen., Harold M. Coombs, Jr., Senior Asst. Atty. Gen., Rakale B. Smith, Asst.*

*Atty. Gen.*, Columbia, *Donald V. Myers, Solicitor*, Lexington, *for respondent.*

Heard Feb. 2, 1994.

Decided Mar. 21, 1994.

TOAL, Justice:

These appeals arise from the trial court's orders allowing representatives of the county council to participate in and members of the press to attend an *ex parte* hearings held pursuant to provisions of our death penalty statute to determine the reasonableness and necessity of investigative and expert services required for both petitioners' death penalty defenses. In both appeals, the facts are similar, the trial judge is the same and the questions presented are identical; therefore, we consolidate the appeals and REVERSE the trial court's orders.

## FACTS

### Bennett Appeal

Petitioner, Johnny Bennett, was arrested and charged with murder in December 1990. In March of 1993, the solicitor's office filed a notice of intent to seek the death penalty. Bennett, an indigent defendant, was assigned counsel to represent him in his capital defense. In response to the death penalty notice, Bennett's assigned counsel filed two *ex parte* motions, pursuant to S.C. Code Ann. § 16-3-26(C), requesting funds for investigative, expert, and other services necessary for the development and presentation of Bennett's defense. Subsequent to a first *ex parte* order, Bennett's counsel notified Lexington County (hereinafter County) that it was expected to pay the authorized funds. As a result of this notification, County contended it was entitled to participate in the *ex parte* proceeding.

On May 7, 1993, a hearing was held on behalf of the County to determine the appropriateness and necessity of the authorized funds. The trial court excused representatives of the solicitor's office; however, representatives for the County and members of the press were allowed to remain in the courtroom. Bennett's counsel maintained that the trial judge's actions jeopardized the integrity of Bennett's case and served to

disclose privileged information to the public and the prosecution prior to trial.

After listening to oral argument, the trial judge issued an order from the bench which allowed the representatives of the County to participate as parties and members of the press to remain present in the courtroom throughout the *"ex parte"* hearing. Recognizing the novelty of his order, the trial judge give leave for the petitioner to appeal his order, and the petitioner filed a notice of intent to appeal on May 17, 1993. On July 27, 1993, this Court granted certiorari to address the novel issue raised by the trial court's order.

## Patterson Appeal

Almost contemporaneously with the trial court's actions in Bennett's case, the identical question arose in a second capital murder case before the same trial court. In 1986, petitioner, another indigent defendant, Raymond Patterson, Jr., was convicted of murder and sentenced to death in Lexington County. After a tortured procedural history on direct appeal,[1] Patterson's capital murder case was awaiting retrial at the time of this dispute. Pattersons appointed counsel filed two *ex parte* motions, pursuant to S.C. Code Ann. § 16-3-26(C), requesting funds for investigative, expert, and other services necessary for the development and presentation of the defense. Based on petitioner's request, County once again contended that it was entitled to participate in the *ex parte* proceeding. At a May 21 hearing, Patterson's counsel requested that the *ex parte* hearing be held without representatives of the County present. The trial judge, however, issued another order stating that the County had the due process right to participate and the press had a right to be present at the hearing.[2]

A subsequent hearing was held on May 28, 1993, where Patterson's counsel again argued that the press should not be present and that representatives of the County should not participate as interested parties in the *ex parte* proceeding. The trial court refused Patterson's request and "readopted,

---

[1] *See State v. Patterson,* 290 S.C. 523, 351 S.E. (2d) 853 (1986); *State v. Patterson,* 299 S.C. 280, 384 S.E. (2d) 699 (1989); *State v. Patterson,* 302 S.C. 384, 396 S.E. (2d) 366 (1990) *cert. granted* — U.S. —, 111 S.Ct. 2253, 114 L.Ed. (2d) 707 (1991).

[2] This order was issued in an almost identical form as the order issued in Bennett's appeal.

reiterated and approved in totality" its previous order of May 21, 1993. (App. at 72.) It is from this order that Patterson now appeals.[3]

## ISSUES

In both cases, the parties argue that the sole issue on appeal is whether the trial court violated an indigent death penalty defendant's statutory and constitutional rights by ordering the inclusion of the County as a party and representatives of the County as participants in the *ex parte* hearing to determine the necessity and reasonableness of investigative and expert services.

We disagree with this characterization and find that two separate and distinct issues lie within this appeal. These issues can be stated as follows:

1. Whether the trial court erred by ordering the inclusion of the County as a party at interest in a hearing which is required by statute to be *ex parte;* and

2. Whether the statutory mandate for an *ex parte* hearing also implicitly requires that the hearing be held *in camera* for purposes of determining the necessity and reasonableness of investigative and expert services for an indigent defendant in a death penalty case.

## LAW/ANALYSIS

Both indigent petitioners, through their assigned counsel, filed motions for funds to pay all investigative and expert services necessary for the development and presentation of the death penalty defense, and at separate hearings, the trial judge issued almost identical orders holding that:

> [t]his court declines to use the *ex parte* procedure so as to protect outright the nature of the expert to be used because the county must be involved in a due process analysis of the use of the funds that are mandated for this cost. [The case law], as construed by this court does not give carte blanche authority to this court to mandate expenditure of public funds without a due process hearing involving that county unit. . . . Optionally, if the court issues or-

---

[3]As with the companion case, the trial judge gave leave to appeal this order prior to proceeding any further in the case. (App. at 6.)

ders that are to be reviewed after the fact, that can ... be done on an *ex parte* basis relating to the court and counsel for the defense, but it will not have any efficacy as to the county under that procedure until there is a hearing.

(Patterson App. at 6) (Bennett App. 35-40).

### Ex Parte Requirement

In S.C. Code Ann., § 16-3-26(C) (Supp. 1992),[4] the General Assembly provided for an *ex parte* hearing to determine the expenses related to the defense of an indigent capital defendant. At the time of the judge's order, section 16-3-26(C) provided that:

> . [u]pon a finding in *ex parte* proceedings that investigative, expert, or other services are reasonably necessary for the representation of the defendant whether in connection with issues relating to guilt or sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment. ...

*Id.* [cited language is unchanged in the 1993 Supplement].

When terms which are contained in a statute are clear and unambiguous, the courts are required to apply them according to their literal meaning. *See Citizens for Lee County, Inc. v. Lee County*, 308 S.C. 23, 416 S.E. (2d) 641 (1992); *Gunnels v. American Liberty Ins. Co.*, 251 S.C. 242, 161 S.E. (2d) 822 (1968). The terms of a statute are to be given their plain and ordinary meaning without employing subtle or forced construction. *Wilson v. State*, — S.C. —, 432 S.E. (2d) 477 (1993).

In plain language, the statute provides for an *ex parte* proceeding for the court to determine what services are reasonably necessary for the representation of the defendant, and for the court to authorize the expenses to obtain such expert services. The trial court, in light of *Bailey, infra*, refused to read the statute literally, even though the term *ex parte* is defined as a hearing:

---

[4]The trial judge's order was issued prior to the amendment of § 16-3-26(C) in 1993, which established maximum hourly rates and payments for appointed attorneys, expert witnesses, and investigative assistance. The 1993 amendment also added sub-section (E) which provides for a hearing to review and validate the fees, costs, and other expenditures on behalf of the defendant *after trial.*

in which the court or tribunal hears only one side of the controversy . . . A judicial proceeding, . . . is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested.

Black's Law Dictionary 297 (5th ed. 1983).

The case law which the trial judge relied on, both for giving the County the standing necessary to question the necessity and reasonableness of expenses and for departing from the clear meaning of the statute, was *Bailey v. South Carolina*, — S.C. —, 424 S.E. (2d) 503 (1992). In *Bailey*, we held that the state statutory caps for indigent capital defense could not "be interpreted as the absolute maximum amount of remuneration for costs and fees, since they clearly do not provide compensation adequate to ensure effective assistance of counsel in capital cases." *Id.* 424 S.E. (2d) at 508. We then held that because the hourly rates and cap were not absolute allowances, but rather limitations on the State's funding for indigent capital defense, the county was ultimately responsible to "supplement [expenses] as required in a given case." *Id.* Our holding in *Bailey* provides that the determination of costs and expenses for trial preparation be made within the sound discretion of the trial judge. *Id.*

It is apparent from the trial court's order that the judge's primary concern was the authorization of expenses to be paid by the County rather than exclusively from State funds. In his order, the trial judge repeatedly referred to the County[5] being "involved in a due process analysis of the use of the funds" and "does not give carte blanche authority to this court to mandate expenditure of public funds without a due process hearing involving that county unit." (App. at 6.)

In *State of South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed. (2d) 769 (1966), the United States Supreme Court held that the word "person" in context of the Due Process Clause cannot be expanded to encompass the states of the union. It is equally obvious that the Due Process Clause

---

[5]The Appellant points out that with the Freedom of Information Act, anything reported to the County Council would be subject to a request which would disclose the defense trial strategy thus impairing the defendant's right to effective assistance of counsel.

cannot be expanded to include any other lesser governmental entity. The requirements of due process are accorded to the criminal defendant, not the County. Expansion of the *ex parte* hearing to allow the County to participate in the determination of the reasonableness of investigative or expert services cannot be made legitimate by according the governmental entity due process rights to establish standing.

Regardless, the clear and unambiguous statutory mandate is that the hearing be conducted *ex parte*. The County does not have standing to participate in the hearing, and to hold otherwise is outside the scope of allowable judicial interpretation of the death penalty statute.

### In Camera Requirement

Throughout this controversy, it is obvious that confusion exists between the terms *ex parte* and *in camera*.

As we stated, *ex parte* is a "judicial proceeding . . . taken . . . for the benefit of one party only, and without notice to, or contestation by, any person adversely interested." Black's at 297. An *in camera* proceeding, on the other hand, is a "trial or hearing held in a place not open to the public. . . ." Black's at 684.

The essence of *ex parte* is that one party may apply for relief, while *in camera* provides privacy to a party or parties. South Carolina Code Ann. § 16-3-26 provides for an *ex parte* hearing; however, it does not require that the *ex parte* proceeding be held *in camera*.

Clearly the death penalty statute's *ex parte* provisions do not close the proceedings. Therefore, the trial judge must treat this case like any other which presents the issue of whether it is appropriate to close the proceedings. Upon motion of the defendant, a hearing in open court must be held to determine the legitimacy of the request for closing the *ex parte* proceeding. The burden of proof at this hearing rests with the party opposing the public's right of access. *Ex Parte The Island Packet; In re: Christopher F.*, — S.C. —, 417 S.E. (2d) 575 (1992). In the open hearing, the trial court must make specific findings of fact, on the record, to determine whether there is a substantial probability of prejudice which would result from the publicity, and whether there are no reasonable alternatives to closure which would protect the defen-

dant's right to a fair trial.[6] *Id.; Ex Parte Columbia Newspapers, Inc.; In re: Goodwin,* 286 S.C. 116, 333 S.E. (2d) 337 (1985); *see Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed. (2d) 1 (1986). If the trial judge closes the proceeding, then the matter can be closed to the public and would be held *ex parte* and *in camera.*

Certainly on the facts of both of the instant cases, it ▮ would appear that there is a substantial probability of prejudice which would result from a public hearing in at least two respects. First, public disclosure of the defendants' request for expert witness fees would telegraph to the prosecution the defendants' defense strategy. Second, the defendants would have to reveal their defenses only because they are indigent. Any time criminal procedures discriminate against defendants by reason of their indigent status, such procedures violate the guarantee of equal protection. Where the indigent defendant is subjected to a process which is required of an indigent defendant and not of a non-indigent defendant, then the process becomes invidiously discriminatory and violative of equal protection. *See Long v. Iowa,* 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed. (2d) 290 (1966); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The equal protection implications become obvious where a non-indigent capital defendant is under no obligation to disclose to the county or the public how much or to whom expenses are to be paid, while the indigent defendant is open to full public scrutiny. There would appear no reasonable alternatives to closure of the *ex parte* hearing which would protect these defendants' rights to a fair trial.

Because there was no hearing to determine whether the *ex parte* proceeding should be held *in camera,* and because the trial court allowed the County to participate in the *ex parte* hearings in violation of the statutory mandate, the trial court is REVERSED. Any further hearings on defendants' *ex parte* expense requests should be conducted consistent with the mandates of the death penalty statute and the guidelines contained in this opinion.

CHANDLER, Acting C.J., FINNEY and MOORE, JJ., and WALTER J. BRISTOW, JR., Acting Associate Justice, concur.

---

[6]Analogous to the closure of a hearing are the procedures established for sealing records in *Davis v. Jennings,* 304 S.C. 502, 405 S.E. (2d) 601 (1991).