605 S.E.2d 744

Raymond P. NELSON, Appellant,

v.

**CHARLESTON COUNTY PARKS & RECREATION COMMISSION, Respondent.**

No. 3882.

Court of Appeals of South Carolina.

Heard Oct. 13, 2004.
Decided Oct. 25, 2004.
Rehearing Denied Dec. 16, 2004.

Chalmers Carey Johnson, of Charleston, for Appellant.

Reginald W. Belcher, of Columbia, for Respondent.

ANDERSON, J.:

Raymond P. Nelson (Nelson) appeals the circuit court's order granting summary judgment to Charleston County Parks and Recreation Commission (CCPRC) on Nelson's action for breach of employment contract. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

CCPRC hired Nelson as a Maintenance Specialist in May 1996, as an at-will employee, and terminated him on February 22, 2001, following a nearly one-month probationary period for substandard performance. For the last two years of Nelson's employment with CCPRC, he worked as the James Island County Maintenance Crew Chief. The position required him to maintain James Island County Park's buildings, water park, campground, utilities, and miscellaneous other structures. The position required, among other things, moderately heavy manual work, technical skills, supervisory knowledge, and the ability to act independently on the job site.

CCPRC terminated Nelson's employment on or about February 22, 2001, because his job performance progressively deteriorated for at least the last eight months of his employment, despite CCPRC's continuing efforts to encourage and

prompt him to improve his poor and substandard performance. CCPRC, through Nelson's direct supervisor and two of CCPRC's long-tenured managers, repeatedly attempted to correct Nelson's excessive and unacceptable performance problems by giving him several oral and written reprimands, counselings, and warnings beginning in July of 2000.

Nelson failed to show improvement in any of the areas recommended for corrective action over the next six months. Effective February 1, 2001 until July 31, 2001, CCPRC placed Nelson on six months probation, expressly setting forth the improvements expected from him during that time period, including providing his direct supervisor with a list of goals and objectives by February 15, 2001. Nelson interpreted the probationary status as creating a six-month employment contract, though no particular document, oral statement, or other evidence supported his position.

Nelson failed to prepare the list of goals. Furthermore, his poor and inadequate planning resulted in his crew abandoning one work project on February 8, 2001, and delaying two others. On February 22, 2001, Nelson's direct supervisor and the two managers agreed to terminate Nelson's employment for "failure to comply with requirements while on probationary status . . . failure to perform work properly or follow work instruction."

Nelson filed a cause of action for wrongful termination under an employment contract on October 31, 2001 against CCPRC, alleging CCPRC altered his employment at-will status when it placed him on probation for his progressively poor job performance. The circuit court granted summary judgment to CCPRC and dismissed the case with prejudice.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c) of the South Carolina Rules of Civil Procedure: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose,* 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002); *Ferguson v. Charleston Lincoln Mercury, Inc.,* 349 S.C. 558, 564 S.E.2d 94 (2002). In determining whether any triable issue of fact

exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Faile v. South Carolina Dep't of Juvenile Justice,* 350 S.C. 315, 324, 566 S.E.2d 536, 539 (2002); *McNair v. Rainsford,* 330 S.C. 332, 499 S.E.2d 488 (Ct.App. 1998). If triable issues exist, those issues must go to the jury. *Young v. South Carolina Dep't of Corr.,* 333 S.C. 714, 718, 511 S.E.2d 413, 415 (Ct.App.1999).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.,* 336 S.C. 53, 59, 518 S.E.2d 301, 305 (Ct.App. 1999). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 120, 542 S.E.2d 736, 738 (Ct.App.2001). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *See Hall v. Fedor,* 349 S.C. 169, 173–74, 561 S.E.2d 654, 656 (Ct.App.2002). Moreover, summary judgment is a drastic remedy which should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Lanham v. Blue Cross and Blue Shield,* 349 S.C. 356, 363, 563 S.E.2d 331, 336 (2002); *Trivelas v. South Carolina Dep't of Transp.,* 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001).

## *LAW/ ANALYSIS*

### I. CCPRC's Actions in Putting Nelson on Probation

Nelson maintains the circuit court erred in granting summary judgment because, viewing the evidence in the light most favorable to Nelson as the nonmoving party, material issues of genuine fact exist concerning whether Nelson's probationary period altered his at-will employment status by creating an employment contract between the parties. We disagree.

South Carolina recognizes the doctrine of employment at-will. *See Prescott v. Farmers Tel. Coop., Inc.,* 335 S.C. 330, 516 S.E.2d 923 (1999). This doctrine provides that a contract for permanent employment is terminable at the pleasure of either party when unsupported by any consideration

other than the employer's duty to provide compensation in exchange for the employee's duty to perform a service or obligation. *See id.* "At-will employment is generally terminable by either party at any time, for any reason or no reason at all." *Id.* at 334, 516 S.E.2d at 925.

South Carolina courts have carved out exceptions to the at-will employment doctrine. *See Small v. Springs Indus., Inc.*, 300 S.C. 481, 388 S.E.2d 808 (1990) (*Small II*); *Davis v. Orangeburg–Calhoun Law Enforcement Comm'n*, 344 S.C. 240, 542 S.E.2d 755 (Ct.App.2001). First, an employee has recourse against an employer for termination in violation of public policy. *Small II*, 300 S.C. at 484, 388 S.E.2d at 810; *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985). Second, an at-will employee may not be terminated for exercising constitutional rights. *Prescott*, 335 S.C. at 335 n. 3, 516 S.E.2d at 925 n. 3; *Moshtaghi v. The Citadel*, 314 S.C. 316, 443 S.E.2d 915 (Ct.App.1994). Finally, an employee has a cause of action against an employer who contractually alters the at-will relationship and terminates the employee in violation of the contract. *Davis*, 344 S.C. at 246–47, 542 S.E.2d at 758. An employer and employee may contractually alter an at-will employment relationship, and as a result, limit the ability of either party to terminate the employment relationship without incurring liability. *See Small v. Springs Indus., Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987) (*Small I*); *Baril*, 352 S.C. at 281, 573 S.E.2d at 836; *see also Culler v. Blue Ridge Elec. Coop., Inc.*, 309 S.C. 243, 422 S.E.2d 91 (1992) (emphasizing that the doctrine of employment at-will in its pure form allows an employer to discharge an employee for good reason, no reason, or bad reason without incurring liability). For example, an employee handbook [1] may create a contract altering an at-will arrangement. *See Small II*, 300 S.C. at 484, 388 S.E.2d at 810; *Baril*, 352 S.C. at 281, 573 S.E.2d at 836; *see also Davis*, 344 S.C. at 247, 542 S.E.2d at 758 (instructing that in certain situations, termi-

---

1. This Court notes the recent amendment to the Code of Laws of South Carolina regarding employee handbooks. However, this amendment is not applicable to the current action as it was enacted subsequent to the institution of this action. Section 41–1–110 of the South Carolina Code provides:

> It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer

nation of at-will employee may give rise to cause of action where at-will status of employee is altered by terms of employee handbook). Thus, an employer's written documents can alter the at-will relationship and create an implied employment contract, but only if the employer phrases the document's language in mandatory terms giving "rise to a promise, an expectation and a benefit" to an employee. *Fleming v. Borden, Inc.*, 316 S.C. 452, 463, 450 S.E.2d 589, 596 (1994).

■ The written reprimands, counselings, and warnings, including the notification of probation letter, wholly lacked any mandatory and promissory language guaranteeing Nelson continued or future employment. CCPRC's policies and practices accurately reflected its at-will status throughout Nelson's tenure. Furthermore, the CCPRC never promised or guaranteed that it would ever employ Nelson on any basis except as an at-will employee, as admitted by Nelson.

Further, Nelson claims the following passage, from CCPRC's "probation" section of the "Disciplinary Action" policy in the Personnel Policies and Procedures Manual, constituted an implied contract:

*Probation:* This is defined as a specific period of time usually 3–6 months, which shall cause the affected employee to lose his or her regular status. This may be used as an alternative action if deemed appropriate. Any infraction of Commission policies during this period may result in more severe disciplinary action, depending on the facts of the case. Periods of disciplinary action shall be set forth in writing to the employee referencing the reason and/or disciplinary action which invoked the period of probation, notifying the employee that a special performance appraisal will be conducted at the close of the probationary period. An interim counseling session must be conducted. The use of probation must be approved by the Executive Director.

or its agent after June 30, 2004, shall not create an express or implied contract of employment if it is conspicuously disclaimed. For purposes of this section, a disclaimer in a handbook or personnel manual must be in underlined capital letters on the first page of the document and signed by the employee. For all other documents referenced in this section, the disclaimer must be in underlined capital letters on the first page of the document. Whether or not a disclaimer is conspicuous is a question of law.
Act No. 185, 2004 S.C. Acts 1841.

██   This Court has applied standard principles of contract interpretation in determining whether an employee handbook constitutes an employment contract. "Where an action presents a question as to the construction of a written contract and the language of the contract is clear and unambiguous," the alleged contract shall determine the "rights and obligations of the parties." *Holden v. Alice Mfg., Inc.*, 317 S.C. 215, 220, 452 S.E.2d 628, 631 (Ct.App.1994).

The foregoing policy did not create an implied contract. In fact, it gave the Commission discretion to impose "more severe disciplinary action" during the probationary period. The only mandatory language used in the paragraph is in relation to the procedures that should be followed when initially administering the probation.

This case differs from *Conner v. City of Forest Acres*, 348 S.C. 454, 560 S.E.2d 606 (2002), because the employer in *Conner* used mandatory terms such as "shall" and "will" in its employee handbook to the extent that the grievance committee voted to reinstate the employee, proving to the supreme court that "reasonable minds could differ." *Id.* at 464, 560 S.E.2d at 612. Not only did CCPRC's managers and Nelson's direct supervisor unanimously agree to terminate his employment, CCPRC's Executive Director upheld Nelson's termination upon his appeal. Furthermore, unlike the employee in *Conner*, Nelson reiterates that he was always employed on an at-will basis with CCPRC.

Nelson could not identify any particular document or oral statement that supported his position. During Nelson's deposition, he testified:

Q. Is there any other reason why you believe your status as an at-will employee was altered?

A. No.

Q. Is there any language, any written language, that you can show me in any document that we've traded back and forth in this case that would support your position?

A. I'm not sure.

Q. Is there anything in the exhibit stack here today that you can go back and show me that you think supports your position in that regard?

A.  I'm not sure if it will or not.

Even in his deposition, Nelson confirms that there is no genuine issue as to a material fact concerning whether an employment contract resulted from the probationary period. For example, Nelson testified:

Q.  We'll read that sentence [from the policy manual] that starts: 'There is no particular order in which the above-noted disciplinary actions must be used. The Commission reserves in its sole discretion the option to utilize any disciplinary action at any time.' [...] Doesn't that one paragraph indicate to you that the Commission again could terminate someone at its sole discretion at any time without following any particular steps?

A.  I guess so.

Q.  ... You would agree that's what this paragraph says?

A.  Yes.

Q.  And you understood this to be the policy of the Commission throughout your employment there?

A.  Yes.

Q.  ... [Y]ou would agree that the Commission throughout your employment maintained the right to terminate an employee at any time without necessarily exhausting any particular steps or procedures?

A.  I don't think it's right.

Q.  I understand that you don't think it's right, but you understood that that was the policy of the Commission?

. . . .

A.  Yes.

Q.  And that was the policy throughout your employment there?

A.  As far as I know.

Finding that an employment contract resulted from this probationary period would lead to the result of giving greater rights and job security to employees whose performance had fallen below the employer's expectations. Even Nelson could see the absurdity in this result as apparent by his testimony during his deposition:

Q.  ... Did you consider yourself to be at a greater risk of termination during your probationary period than you were before you were placed on probation?

A. Probably.

Q. And why do you say that?

A. Because you're on probation.

. . . .

Q. Your supervisor looked at your performance more closely after you were on probation; would you agree with that?

A. Probably.

Q. At the Commission do you think that an employee who is on probation is at a higher risk of being terminated than employees who are not on probation?

A. Probably.

Q. Do you think that's right? Do you think that's the way it should be?

A. Yes.

Q. And why do you think that? Why do you think that's the way it should be?

A. I just do.

Finally, an employee's at-will status can be altered where the discharge violates a clear mandate of public policy. *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 225, 337 S.E.2d 213, 213 (1985). In *Stiles v. American Gen. Life Ins. Co.,* 335 S.C. 222, 516 S.E.2d 449 (1999), the supreme court held that an employee subject to a notice provision prior to termination is not an employee at-will, and, therefore, discharge of that employee for refusing to violate a law was against public policy. *Id.* at 224, 516 S.E.2d at 450. *Stiles* is easily distinguishable from the case at hand. In *Stiles,* the employer inserted an employment end date in the policy, signifying a term by which the employment would be guided, not simply the ending of a probationary period. *Id.* In the instant case, Nelson never alleged any public policy violation or claimed that the Commission promised him any specific notice prior to terminating him. In fact, Nelson confessed that his performance had not been up to par.

## II. CCPRC's Actions in Terminating Nelson's Employment

██ Nelson claims the circuit court erred in granting summary judgment because, viewing the evidence in the light

most favorable to Nelson as the nonmoving party, material issues of fact exist regarding whether CCPRC's actions in terminating his employment breached an employment contract between CCPRC and Nelson. We disagree.

Even if the parties had entered into a contract, we find CCPRC's actions would not constitute a breach. When an employment contract only permits termination for cause, the appropriate test on the issue of breach focuses on whether the employer had a "reasonable good faith belief that sufficient cause existed for termination." *Conner v. City of Forest Acres,* 348 S.C. 454, 464, 560 S.E.2d 606, 611 (2002). "[T]he fact finder must not focus on whether the employee actually committed misconduct; instead, the focus must be on whether the employer reasonably determined it had cause to terminate." *Id.* at 464–65, 560 S.E.2d at 611.

CCPRC had a unanimous, reasonable good faith belief that Nelson had failed or refused to improve his poor and substandard performance in any respect, giving CCPRC substantial cause to terminate his employment. Nelson's managers and direct supervisor notified him on several different occasions of the deficiencies in his performance. He was given set guidelines through two performance memorandums in July 2000 and January 2001, attempting to coach Nelson to succeed so he could continue his employment with CCPRC as a productive and satisfactory employee. As a last ditch effort, management agreed to place Nelson on probation and executed a Disciplinary Action report, which stated the areas that needed improvement. The main areas included his ability to effectively manage time and resources, his ability to understand the requirements necessary to accomplish or complete a project, his knowledge of budgets and correctly allocating those funds, and his ability to plan goals and objectives for the crew, which the management asked be compiled and turned in to his immediate supervisor by February 15, 2001.

He admittedly failed in all these tasks. His crew abandoned a work project at a fishing dock due to a lack of materials. A shower valve project was delayed because he failed to have the proper equipment available. A seam re-

placement project was delayed because he failed to make available the proper safety equipment and gave unclear directions to his crew. Lastly, he never provided his supervisor with the requested list of goals and objectives.

Nelson professed that, as an employee on probation, he would be more closely scrutinized and at a greater risk for termination than before he was placed on probation. Nelson's theory that the probationary status created an employment contract goes against the very crux of being on probation. For Nelson to prevail, this Court would need to find that CCPRC granted greater job security to probationary employees than to employees who were more successful, better performing workers. We refuse to reach that illogical result.

We hold the probationary status did not create an employment contract, and, even if a contract had been formed, CCPRC's actions did not constitute a breach.

## CONCLUSION

For the reasons stated herein, the circuit court is **AFFIRMED.**

GOOLSBY and WILLIAMS, JJ., concur.