654 S.E.2d 837

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,**

v.

**James W. SMITH, Jr. and Elizabeth Smith, Respondents.**

No. 4295.

Court of Appeals of South Carolina.

Submitted May 1, 2007.

Filed Sept. 26, 2007.

Rehearing Denied Jan. 16, 2008.

Certiorari Dismissed March 25, 2008.

62

John Robert Murphy, of Columbia, for Appellant.

Bradley Baker, of Lexington, for Respondents.

HUFF, J.

James W. Smith, Jr. and Elizabeth Smith (the Smiths) were involved in an automobile accident with an uninsured motorist. Nationwide Mutual Insurance Company (Nationwide) brought a declaratory judgment action to determine whether the insurance policy covering the vehicle in which the Smiths were riding was void for lack of an insurable interest. The trial court granted summary judgment in favor of the Smiths. Nationwide appeals.[1]

## FACTS

On October 29, 2003, the Smiths were involved in a motor vehicle accident in Lexington County, South Carolina. At the time of the accident, James W. Smith, Jr. was driving and

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Elizabeth Smith was a passenger in a 1999 Montero Sport (Montero) owned by James W. Smith, Jr. The accident was caused when Martha Lawrence (Lawrence) collided with the vehicle in front of the Smiths and then hit the Smiths causing the Montero to overturn. Lawrence was driving an uninsured vehicle. As a result of the accident the Smiths pursued uninsured motorist claims on the Nationwide Policy Number: 61 39 K 931345.

■ At the time of the accident, the Montero was a listed vehicle on the Nationwide Policy Number: 61 39 K 931345. While the Montero was owned by and registered to James W. Smith, Jr., the Nationwide policy covering the Montero was taken out and owned by his father, James W. Smith, Sr. (Father).[2] Father was the named insured under the policy, which provided uninsured motorist (UM) coverage in the amounts of $50,000 per person and $100,000 per occurrence. The policy also covered a 1992 Ford Ranger (Ranger), owned by Father and his grandson, Christopher Smith. The UM policy covering the Ranger also provided UM coverage in the amounts of $50,000 per person and $100,000 per occurrence. In addition to Father, the policy listed drivers Elizabeth Smith and Christopher Smith.[3]

Nationwide denied coverage and filed a declaratory judgment action for a determination that the policy covering the Montero was void for lack of an insurable interest. The Smiths answered and counterclaimed. Both Nationwide and the Smiths filed motions for summary judgment.

At the hearing, Nationwide sought a declaration that the policy was void as to the Montero and the Smiths were precluded from collecting UM coverage from that policy.

2. Father was residing with the Smiths and his grandson at the time the accident occurred. Father did not drive due to medical reasons and from time to time relied on the Smiths to drive him to and from doctor visits and to obtain prescriptions.

3. Nationwide concedes that both the Smiths are Class I insureds under the Father's policy. There are two classes of insureds: (1) the named insured, his spouse and relatives residing in his household; and, (2) any person using, with the consent of the named insured, the motor vehicle to which the policy applies and a guest in the motor vehicle. *Concrete Servs., Inc. v. U.S. Fid. & Guar. Co.*, 331 S.C. 506, 509, 498 S.E.2d 865, 866 (1998). The right to stack is available only to a Class I insured. *Id.*

Nationwide argued Father lacked an insurable interest in the vehicle because he did not own the Montero, did not control the Montero, or was not responsible for or could be held liable for its operation or use. Nationwide also raised the issue as to whether the Smiths would be entitled to UM coverage under the Ranger's policy. Nationwide noted four cases addressing the issue were pending before the supreme court. Depending on the outcome of the pending cases, Nationwide argued the Smiths would either be entitled to nothing or the basic statutory limit of $15,000 per person, $30,000 per occurrence.

The Smiths argued because they used the Montero to transport Father, Father benefited from its use and therefore had an insurable interest in the Montero. Regardless, they averred the insurable interest requirement for liability coverage was irrelevant when dealing with UM coverage. Because the uninsured motorist statute mandates insurers to provide UM coverage to the named insured and resident relatives of the named insured's household at all times, the Smiths claimed the insurable interest argument had no bearing on UM coverage.

The trial court found the insurable interest requirement for liability insurance was irrelevant to the case as the issue before the court dealt with UM coverage and not liability coverage. The trial court characterized Nationwide's position as an attempt to circumvent the statutory mandate that automobile insurance carriers must provide UM coverage on all policies issued. The trial court concluded the Smiths were entitled to $50,000 per person, $100,000 per occurrence in UM coverage on the Montero and that James W. Smith, Jr. and Elizabeth Smith each could stack the $50,000 UM coverage provided on the Montero policy and the $50,000 UM coverage provided on the Ranger. The total coverage available to each was held to be $100,000 for a total of $200,000 in UM coverage for the occurrence.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, this court applies the same standard of review as the trial court under Rule 56, SCRCP. *Cowburn v. Leventis,* 366

S.C. 20, 30, 619 S.E.2d 437, 443 (Ct.App.2005). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. To determine whether any triable issues of fact exist, the reviewing court must consider the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Law v. S.C. Dep't of Corrections,* 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006).

When plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Ellis v. Davidson,* 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct.App.2004). However, summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Bennett v. Investors Title Ins. Co.,* 370 S.C. 578, 588, 635 S.E.2d 649, 654 (Ct.App.2006). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Nelson v. Charleston County Parks & Recreation Comm'n,* 362 S.C. 1, 5, 605 S.E.2d 744, 746 (Ct.App.2004).

## LAW/ANALYSIS

Nationwide claims the trial court erred in holding the insurable interest requirement for liability insurance was irrelevant when dealing with UM coverage. We agree.

Initially, we note that in South Carolina all automobile insurance policies are statutorily required to contain UM coverage. S.C.Code Ann. § 38–77–150 (2002) (requiring all automobile insurance policies contain a provision to protect against damages an insured is legally entitled to recover which "arise out of the ownership, maintenance or use" of an uninsured vehicle). South Carolina mandates that UM coverage must be provided in an amount equal to the minimum liability limits, *id.,* and requires insurance carriers to offer, at the option of the insured, UM coverage up to the limits of the insured's liability coverage. S.C.Code Ann. § 38–77–160 (2002). Thus, UM coverage does not exist in and of itself, but rather is a requirement of and dependent on a valid automobile insurance policy.

An automobile insurance policy, like other forms of insurance, must be supported by an insurable interest in the named insured. *American Mut. Fire Ins. Co. v. Passmore*, 275 S.C. 618, 620, 274 S.E.2d 416, 417 (1981) (citations omitted); Couch on Insurance 3d § 41:1 (2005) (stating, "[t]oday, it is universally held, either by force of statute or upon public policy grounds, that insurable interest is necessary to the validity of a policy, no matter what the subject matter."). "The insurable interest required does not depend upon the named insured having either a legal or equitable interest in the property, 'but it is enough that the insured may be held liable for damages to its operation and use.' " *Passmore*, 275 S.C. at 620–21, 274 S.E.2d at 417–18 quoting *Nationwide Mutual Ins. Co. v. Douglas*, 273 S.C. 243, 255, 255 S.E.2d 828 (1979)(Lewis, C.J., dissenting). Where a named insured does not have any insurable interest in the vehicle, the insurance policy is illegal. *Id.* at 621–22, 274 S.E.2d at 418. Thus, liability insurance is dependent upon an insurable interest and since liability insurance cannot be issued without UM coverage, UM coverage, consequently, is indirectly dependent on the existence of an insurable interest.

The trial court ignored the requirement that an individual must have an insurable interest in the vehicle in which he seeks coverage by making a distinction between liability coverage and UM coverage. The court based its distinction on *Unisun Insurance Company v. Schmidt*, 339 S.C. 362, 529 S.E.2d 280 (2000) and *Hogan v. Home Insurance Company*, 260 S.C. 157, 194 S.E.2d 890 (1973). In both cases, the insurance company involved attempted to exclude UM coverage to an insured under a valid policy.

In *Schmidt*, the defendant, a guest of the named insured, was injured while riding in the named insured's vehicle while driven by an unauthorized driver. 339 S.C. at 364–65, 529 S.E.2d at 281. The insurance company attempted to exclude coverage because once the vehicle was driven without permission it was no longer covered under the policy. *Id.* at 365, 529 S.E.2d at 281. This court denied coverage, finding when the vehicle was driven without permission it no longer was a vehicle "to which the policy applied." *Id.* The definition of insured under South Carolina Code Ann. § 38–77–30(7) defines "insured" to mean, "the named insured and, while resi-

dent of the same household, the spouse of any named insured and relatives ... and any person who uses with the consent ... the motor vehicle to which the policy applies." The supreme court found the "motor vehicle to which the policy applies" is "the motor vehicle designated in the policy" and thus are words of identification and not words of exclusion. *Id.* at 367, 529 S.E.2d at 282 (citing *Davidson v. Eastern Fire & Cas. Ins. Co.*, 245 S.C. 472, 477–78, 141 S.E.2d 135, 138 (1965)). The court concluded the vehicle qualified as an uninsured vehicle and the defendant was covered under the uninsured portion of the policy. *Id.*

In this case, the trial court finds the motor vehicle to which the policy applies is the Montero Sport as it is the motor vehicle designated in the policy. However, in *Schmidt* the policy the court relies on to find coverage is a valid insurance policy. In this case, the policy which the court relies on to find coverage may not be a valid policy. If there is no valid policy, there can be no motor vehicle to which the policy applies, nor can there be a motor vehicle designated in the policy.

Likewise, the court relies on *Hogan* to distinguish the insurable interest requirement for liability coverage from UM coverage. In *Hogan*, the named insured's son was killed while riding in a vehicle she retained title to but which was actually owned by and driven by her nephew. 260 S.C. at 159, 194 S.E.2d at 890–91. An exclusion in the insurance policy provided UM coverage did not apply to injuries sustained by an "uninsured" while occupying a car other than the insured vehicle owned by the named insured or a resident relative. *Id.* at 159–160, 194 S.E.2d at 891. The court held the exclusion invalid because it conflicted with the statutory mandate that UM coverage apply to the named insured and resident relatives without regard to the use of the insured vehicle. *Id.* at 162, 194 S.E.2d at 892.

Again, as in *Schmidt*, the issue before the *Hogan* court dealt with an exclusion included in a valid insurance policy. It is undeniable that under a valid insurance policy Nationwide could not exclude coverage in this case. The question, however, is not whether Nationwide is unduly excluding coverage;

rather, the issue is whether there exists a valid insurance policy.

We acknowledge the purpose of the uninsured motorist statute is to provide benefits and protection against the peril of injury or death by an uninsured motorist to an insured motorist and his family. *Ferguson v. State Farm Mut. Auto. Ins. Co.*, 261 S.C. 96, 100, 198 S.E.2d 522, 524 (1973). We also remain ever mindful the statute is remedial in nature, enacted for the benefit of the injured persons, and is to be liberally construed so that the purpose intended may be accomplished. *Gunnels v. American Liberty Ins. Co.*, 251 S.C. 242, 247, 161 S.E.2d 822, 824 (1968). However, we do not believe that entitles this court to pervert the well settled rule of law in this country that an insured must possess an interest in the subject matter of the policy. Where an insurable interest does not exist at the time the contract for insurance was made, the insurance policy is void from its inception. *Abraham v. New York Underwriters Ins. Co.*, 187 S.C. 70, 78, 196 S.E. 531, 534 (1938).

Therefore, in this case, the question whether Father lacked an insurable interest in the Montero is relevant to determining the amount of UM coverage available to the Smiths. UM coverage provides "benefits and protection against the peril of injury or death by an uninsured motorist to an insured motorist, his family, and the permissive users of his vehicle." *Ferguson*, 261 S.C. at 100, 198 S.E.2d at 524. An insured is entitled to stack UM coverage in an amount no greater than the amount of coverage on the vehicle involved in the accident. *S.C. Farm Bureau Mut. Ins. Co. v. Mooneyham*, 304 S.C. 442, 446, 405 S.E.2d 396, 398 (1991). Stacking is defined "as the insured's recovery of damages under more than one policy until all of his damages are satisfied or the limits of all available policies are met." *Giles v. Whitaker*, 297 S.C. 267, 268, 376 S.E.2d 278, 279 (1989). "If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage." S.C.Code Ann. § 38–77–160 (2002). This court has interpreted the statute to mean UM coverage is personal and portable, meaning coverage follows the person. *Nation-*

*wide Mut. Ins. Co. v. Erwood,* 364 S.C. 1, 6, 611 S.E.2d 319, 322 (Ct.App.2005). The "personal and portable" nature of UM coverage was recently upheld by the supreme court. *Nationwide Mut. Ins. Co. v. Erwood,* 373 S.C. 88, 91, 644 S.E.2d 62 (2007) (*Erwood II* ). The court reiterated that UM coverage follows the insured not the vehicle and upheld the court of appeals decision that an insured was entitled to receive UM benefits in the basic limits from the policy maintained on a non-involved vehicle. *Id.* at 92, 644 S.E.2d at 63.

In this case, the Smiths must first look to recover the amount of UM coverage on the Montero, as it was the vehicle involved in the accident and serves as the measuring vehicle for the stacking of additional UM coverage. If Father had an insurable interest in the Montero, thereby making the policy valid, the Smiths would be able to recover the UM coverage provided under the policy. In addition, the Smiths would be able to stack the UM coverage provided on the Ranger.

However, if, as Nationwide asserts, the policy is void as to the Montero for a lack of insurable interest, the Montero will have no liability coverage and the Smiths may not look to it for UM coverage. Yet, the Smiths would not be without coverage. According to S.C.Code Ann. § 38–77–160 and the recent *Erwood II* decision, the Smiths may look to the UM coverage maintained on the non-involved vehicle. *See* S.C.Code Ann. § 38–77–160 (2002); *Nationwide Mut. Ins. Co. v. Erwood,* 373 S.C. at 90–91, 644 S.E.2d at 63–64.

Nationwide acknowledged *Erwood,* pending before the supreme court at the time of trial and filing of appeal, would answer the coverage issue in this case in the event the Montero policy was found to be void and the Smiths were limited to coverage under the Ranger's policy. The defendant in *Erwood* was a passenger on an uninsured motorcycle when it was involved in an accident. The defendant, however, owned an insured automobile providing UM coverage in the required statutory minimum amount of $15,000. Ultimately in *Erwood II,* the supreme court found the insured was entitled to UM coverage from her non-involved vehicle because of the personal and portable nature of UM coverage. Since the UM coverage on her non-involved vehicle was the statutory minimum of $15,000, the court limited her coverage to the statuto-

ry limit. Nationwide asserts if *Erwood* were to be upheld the Smiths would be limited to the statutory minimum of $15,000. We disagree. According to *Erwood II*, the Smiths would be limited in recovery to the UM coverage provided on the Ranger, the non-involved vehicle.

Because the trial court found whether Father had an insurable interest was irrelevant to this case, it did not address whether Father actually had an insurable interest. As discussed above, we hold the issue of insurable interest is pivotal in determining the recovery available to the Smiths. Therefore, we REVERSE the grant of summary judgment and REMAND. In light of our disposition, we need not address Nationwide's remaining issues. *See Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 340–41, 428 S.E.2d 886, 889 (1993) (appellate court need not address a remaining issue when resolution of prior issue is dispositive).

**REVERSED AND REMANDED**

BEATTY, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, J. (dissenting in a separate opinion):

Because I agree with the disposition and reasoning of the master-in-equity, I **VOTE** to **AFFIRM** and adopt the analysis in his order as my dissent:

### ORDER OF MASTER–IN–EQUITY
### CLYDE N. DAVIS, JR.

South Carolina Code Ann. § 38–77–150 mandates that all automobile insurance carriers may not issue or deliver policies unless the policies contain a provision providing uninsured motorist coverage. The uninsured motorist statute is remedial and was enacted for the benefit of injured persons; the statute is to be liberally construed to accomplish this purpose. *Gunnels v. American Liberty Ins. Co.,* 251 S.C. 242, 161 S.E.2d 822 (1968); *Franklin v. Devore,* 327 S.C. 418, 489 S.E.2d 651 (Ct.App.1997). Provisions inconsistent with uninsured motorist statutes are void. *Kay v. State Farm Mut. Auto. Ins. Co.,* 349 S.C. 446, 562 S.E.2d 676 (2002).

The merit of Nationwide's position in the case at hand hinges upon whether Nationwide can circumvent the requirement of South Carolina Code Ann. § 38-77-150 to deny James W. Smith, Jr. and Elizabeth Smith uninsured motorist coverage benefits simply because the vehicle was owned by James W. Smith, Jr. and James W. Smith, Sr. had no ownership interest in the Montero Sport. The evidence reveals that the Montero Sport was the primary means of transportation for the family that included James W. Smith, Jr., Elizabeth Smith, and James W. Smith, Sr. The evidence establishes that the vehicle was driven primarily by Elizabeth Smith who was a listed driver on the policy. James W. Smith, Sr. did not drive at all due to medical reasons. The vehicle was often used to transport James W. Smith, Sr. to and from doctors' visits and to obtain prescriptions. The testimony reveals that this was done several times a month. James W. Smith, Sr. certainly derived a benefit from the Montero Sport. The Montero Sport and Elizabeth Smith were added to the policy, premiums for both were collected and retained by Nationwide, and Nationwide should not be allowed to avoid payment of an uninsured claim due to what amounts to a technicality.

This Court is persuaded by the decision of the South Carolina Supreme Court in *Unisun Ins. Co. v. Schmidt*, 339 S.C. 362, 529 S.E.2d 280 (2000), and holds that the insurable interest argument is irrelevant in this case, as we are dealing with uninsured coverage and not liability coverage. In the case of *Schmidt*, the South Carolina Supreme Court addressed a similar factual scenario. In *Schmidt*, the Defendant was injured while riding in a car driven by an unauthorized driver. *Schmidt* at 364–65, 529 S.E.2d at 281. The parties in *Schmidt* stipulated that January O'Neale's father gave her a BMW with strict instructions not to let anyone else drive the car. *Schmidt* at 365, 529 S.E.2d at 281. On the date in question, Miss O'Neale and her friend Jennifer Hurst went to a party at the home of Christopher Schmidt. *Id.* During the party, Schmidt drove the BMW with Hurst asleep in the back seat. *Id.* Schmidt lost control of the vehicle, hit a tree and Hurst was injured. *Id.* The parties agreed that Schmidt did not have permission to drive the vehicle, but that Hurst's use of the BMW at all times was consensual. The insurance carrier for the BMW was State Farm, and they successfully denied

liability coverage due to the fact that Schmidt did not have permission to operate the vehicle. *Id.* Hurst then attempted to collect under the uninsured coverage of the State Farm policy covering the BMW. Hurst argued that since she was a permissive occupant, she was covered. The trial court sided with Hurst, but the South Carolina Court of Appeals reversed. The Court of Appeals held that for Hurst to be an insured under the statutory definition of insured, she must be a guest in a vehicle "to which the policy applied." *Schmidt* at 365, 529 S.E.2d at 281. The Court of Appeals held that when Schmidt drove off in the vehicle without permission, the State Farm policy no longer applied to the vehicle. *Id.* Based on their conclusion, the Court of Appeals never addressed whether the BMW was an uninsured motor vehicle.

The South Carolina Supreme Court then reversed the Court of Appeals. The South Carolina Supreme Court first looked at the definition of insured under South Carolina Code Ann. § 38–77–30(7) which defines insured to mean:

the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above.

The South Carolina Supreme Court then stated that the Court of Appeals had erred in concluding that the O'Neale vehicle was not a vehicle "to which the policy applied." *Schmidt* at 366–67, 529 S.E.2d at 282. The Court then held that the " 'motor vehicle to which the policy applies' is 'the motor vehicle designated in the policy' " *Schmidt* at 367, 529 S.E.2d at 282 (citing *Davidson v. Eastern Fire & Cas. Ins. Co.,* 245 S.C. 472, 141 S.E.2d 135, 138 (1965)). The South Carolina Supreme Court then stated that the words "to which the policy applies" are words of identification and not words of exclusion as used by the Court of Appeals. *Schmidt* at 367, 529 S.E.2d at 282. The South Carolina Supreme Court then looked at the definition of an uninsured vehicle and concluded that the O'Neale vehicle qualified as an uninsured vehicle pursuant to South Carolina Code Ann. § 38–77–30(13) and that Hurst was covered under the uninsured portion of the

policy. *Id.* The Supreme Court stated that the purpose of the uninsured motorist law is "to provide benefits and protection against the peril of injury or death by an uninsured motorist to an insured motorist and his family . . ." *Schmidt* at 368, 529 S.E.2d at 283 citing *Ferguson v. State Farm Mut. Auto Ins. Co.*, 261 S.C. 96, 100, 198 S.E.2d 522, 524 (1973).

Applying the holding of the South Carolina Supreme Court in *Schmidt* to the case at hand, one must conclude that the Smiths should be covered under the uninsured motorist provision of the policy covering the Montero. As in *Schmidt*, they are insureds under South Carolina Code Ann. § 38–77–30(7), as they resided with the insured, James W. Smith, Sr. and are related by blood and marriage to the insured James W. Smith, Sr. Furthermore, the motor vehicle to which the policy applies would be the Montero Sport, as that is "the motor vehicle designated in the policy." Furthermore, the Nationwide Policy at issue on page U1, which is the Uninsured Motorists and Underinsured Motorist provision, states: "We will pay damages, including derivative claims, because the bodily injury suffered by you or a relative, and because of property damage. Such damages must be due by law to you or a relative for the owner or driver of: 1. an uninsured motor vehicle . . ." Therefore, the uninsured motorist coverage provision of the Nationwide policy covering the Montero should cover James W. Smith, Jr. and Elizabeth Smith when applying the reasoning of the South Carolina Supreme Court in *Schmidt* and the policy language of the Nationwide policy.

This Court is also persuaded by the holding of the South Carolina Supreme Court in *Hogan v. Home Ins. Co.*, 260 S.C. 157, 194 S.E.2d 890 (1973). In *Hogan,* the South Carolina Supreme Court reviewed the judgment from the South Carolina lower court, which held that a policy clause excluding uninsured motorist coverage to the insured and her family, unless they were riding in the vehicle named in the policy, violated the South Carolina Motor Vehicle Safety Responsibility Act (S.C.Code Ann. § 46–750.31 to 46–750.32 (1962 Code of Laws)).

The Supreme Court of South Carolina then points out the distinction between liability and uninsured motorist coverage. The Court states that the liability contract is only required to insure "persons defined as insured, against loss from liability

imposed by law for damages arriving out of the ownership, maintenance or use of the motor vehicle described in the policy; while uninsured motorist coverage obligates the insured to pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured vehicle." *Hogan* at 162, 194 S.E.2d at 892 (internal quotations omitted). Uninsured motorist coverage is not to provide coverage for the uninsured vehicle but to afford additional protection to an insured. *Id.* Unlike the provisions relative to liability coverage, the Statute plainly affords uninsured motorist coverage to the named insured and resident relatives of his/her household at all times and without regard to the activity in which they were engaged at the time. *Id.* The Supreme Court stated such coverage is nowhere limited in the Statute to the use of the insured vehicle and cannot be so limited by policy provisions. *Id.* The *Hogan* decision is significant because the Supreme Court was examining similar statutory language which is applicable today.

Nationwide's argument that having no insurable interest defeats uninsured coverage is supported by no case law that refers to uninsured motorist coverage. Within their memorandum, Nationwide has cited the South Carolina cases of *American Mut. Fire Ins. Co. v. Passmore*, 275 S.C. 618, 274 S.E.2d 416 (1981), and *Benton & Rhodes, Inc. v. Boden*, 310 S.C. 400, 426 S.E.2d 823 (Ct.App.1993). These cases can easily be distinguished from the case at hand, as neither refer or pertain to uninsured motorist coverage. The case of *Passmore* involved a situation in which Helen Whitehead agreed to sell her 1970 Chevrolet Nova to Lonnie Reed in exchange for a down payment and assumption of the existing indebtedness. Per the agreement, Mr. Reed was required to obtain liability insurance on the vehicle. Because Mr. Reed had poor credit, he could not obtain liability insurance and approached a friend, Leaman Foxworth, who agreed to place the vehicle on his policy. The girlfriend of Lonnie Reed was then involved in a collision with James Passmore on May 21, 1977. The trial judge held that an insurance interest was not required for liability insurance in South Carolina, and the Supreme Court reversed the Trial Court's decision and remanded the matter. The Supreme Court held that with regard to liability coverage, the insurable interest does not depend upon the named in-

76

sured having either a legal or equitable interest in the property, but it is enough that the insured may be held liable for damages to its operation and use. *Passmore* at 620–21, 274 S.E.2d at 417–18. *Benton & Rhodes* does not involve automobile insurance.

## CONCLUSION

In conclusion, Nationwide's argument that there is no uninsured coverage on the Montero Sport is not supported by the evidence or the case law, is irrelevant, and to hold there is no uninsured motorist coverage on the Montero Sport would be against public policy. The Smiths are entitled to Fifty Thousand ($50,000.00) Dollars per person, One Hundred Thousand ($100,000.00) Dollars per occurrence of uninsured coverage on the Montero Sport and then they would each be able to stack the Fifty Thousand ($50,000.00) dollars uninsured motorist coverage provided by the Montero Sport policy and the Fifty Thousand ($50,000.00) Dollars uninsured motorist coverage provided by the 1992 Ford Ranger. The total coverage available to each should be One Hundred Thousand ($100,-00.00) Dollars for a total of Two Hundred Thousand ($200,-000.000) Dollars in total uninsured motorist coverage for this occurrence. Stacking would be allowed, as James W. Smith, Jr. and Elizabeth Smith are relatives of the insured, James W. Smith, Sr., and resided with him at the time of the accident, thus they are Class 1 insureds. Therefore they can stack the available uninsured motorist coverage per *Concrete Servs., Inc. v. United States Fidelity & Guar. Co.*, 331 S.C. 506, 498 S.E.2d 865 (1998), and South Carolina Code Ann. § 38–77–160.

(some minor typographical and citation errors corrected)

Accordingly, I **VOTE** to **AFFIRM.**